**V. Marvalene PANKEY, as an Individual and Power of Attorney for Stacy M. Simpson, Plaintiff,**

v.

**William L. WEBSTER, Attorney General of the State of Missouri; State of Missouri; William Roberts, The Honorable Circuit Judge of Bates County, Missouri; William Crawford, The Honorable Circuit Judge of Jasper County; Hugh Jenkins, Defendants.**

No. 92–5071–CV–SW–8.

United States District Court,
W.D. Missouri,
Southwestern Division.

March 2, 1993.

V. Marvalene Pankey, pro se.

William L. Webster, Atty. Gen., Missouri Atty. Gen.'s Office, Jefferson City, MO, pro se and for State of Mo.

## ORDER

STEVENS, Chief Judge.

On behalf of herself and as "power of attorney" [sic] for Stacy M. Simpson,[1] Plaintiff V. Marvalene Pankey brings this action against Missouri Attorney General William L. Webster, Missouri Circuit Court Judges William Roberts and William Crawford, and Bates County Prosecutor Hugh Jenkins. Plaintiff is proceeding *pro se,* and the case is now before the court on plaintiff's application to proceed *in forma pauperis. See* 28 U.S.C. § 1915.

While plaintiff's application to proceed *in forma pauperis* was pending in the instant case, the court learned that a nearly identical case was dismissed as frivolous by the Honorable Elmo B. Hunter. *See Pankey v. Webster, et al.,* No. 92–1019–CV–W–8 (W.D.Mo. order of dismissal filed Dec. 11, 1992).[2] That case also was filed by plaintiff Pankey. A comparison of the two files, and a review of Judge Hunter's order and the relevant legal principles, convinced this court that the present case also should be dismissed. Accordingly, in an order dated December 29, 1992, the court ordered plaintiff either to dismiss this case voluntarily or appear and show cause why this case should not be dismissed. In addition, the court notified plaintiff that her conduct might warrant the imposition of sanctions. Stacy Simpson Moran and her retained counsel, John P. O'Connor, were invited to appear at the hearing, and all parties were authorized to make relevant filings in connection with this matter.

The show cause hearing was held on January 15, 1993. At the conclusion of the hearing, the court ruled that this case is frivolous, *see* 28 U.S.C. § 1915(d), ordered the case to be dismissed, and permanently enjoined plaintiff V. Marvalene Pankey from filing any complaint, pleading, or motion on behalf of Stacy Simpson Moran.

This order follows the court's oral ruling at the January 15, 1993 hearing.

### I. Background

The following facts are provided for context. On September 5, 1985, the Missouri courts certified Stacy Simpson to stand trial

---

1. Although plaintiff Pankey continues to refer to Stacy Simpson by her maiden name, the court will refer to Stacy Simpson by her married name: Stacy Simpson Moran. The court also notes that Stacy Simpson Moran is well past the age of majority, and has moved to Illinois where she lives with her husband and their son.

2. The court notes that it has benefitted greatly from the insightful analysis set forth in Judge Hunter's order of December 11, 1992.

as an adult for the shooting death of her mother, Gail Simpson. *Simpson v. Camper,* 743 F.Supp. 1342, 1343–44 (W.D.Mo.1990) (Hunter, J.), *appeal held in abeyance,* 927 F.2d 392 (8th Cir.1991), *vacated,* 974 F.2d 1030 (8th Cir.1992) (ruling that federal habeas corpus proceedings were moot since a Missouri appellate court had granted Stacy Simpson relief which duplicated the order of the district court). At that time, Stacy Simpson was fourteen years old. *Id.* at 1344. A year later, at age fifteen, Stacy Simpson filed an *Alford* plea to manslaughter charges pursuant to a plea bargain agreement. *Id.* The Missouri courts subsequently denied Stacy Simpson's motion to withdraw her plea, and sentenced her to eleven years incarceration on November 3, 1986. *Id.*

In 1990, Judge Hunter, presiding over Division 3 of this court, conditionally granted Stacy Simpson's petition for habeas corpus, set aside her conviction, ordered the State of Missouri to allow her to withdraw her *Alford* plea, and granted the state sixty days to bring Stacy Simpson to trial on the original charges. *Id.* at 1353. At the time of January 15, 1993 hearing in the present case, the state had allowed Stacy Simpson Moran to withdraw her plea and was preparing to try her for first-degree murder. On February 3, 1993, Stacy Simpson Moran was acquitted of that charge by a jury in the Circuit Court for Jasper, Missouri. Donald Bradley, *Acquittal Resolves '85 Slaying Case,* K.C. Star, Feb. 4, 1993, at A1.

## II. The Present Action

Proceeding *pro se,* plaintiff V. Marvalene Pankey brings this action on behalf of herself and as "power of attorney" for Stacy Simpson [Moran]. The named defendants are William L. Webster "as Mo. Atty General and czar of Mo.'s fourth branch of government," Compl. at 1, Missouri Circuit Court Judges William Crawford and William Roberts, and Bates County Prosecutor Hugh Jenkins. Plaintiff claims the defendants have deliberately refused to indict the actual killers of Gail Simpson, imprisoned Stacy Simpson Moran for her mother's murder, and have continued to insist that Stacy Simpson Moran "must prove her innocence or forever take the wrap [sic] for her father's crime." *Id.* at 2.

Plaintiff alleges that the purpose of the present action is to protect plaintiff's own life and property; to protect Stacy Simpson Moran from her father and from the defendants; to avoid further criminal prosecution of Stacy Simpson Moran; and to "protect the lives of others, unknown, harmed by the possible continued violence and/or drug supplying of Frank Lee Simpson [who is Stacy Simpson Moran's father] and his associates." *Id.* at 4.

Plaintiff seeks a variety of relief, including a preliminary injunction ordering the state and Bates County Prosecutor Hugh Jenkins to stay all further action in the criminal case against Stacy Simpson Moran. Plaintiff also seeks a permanent injunction ordering the defendants to: (1) assign a special prosecutor to the Gail Simpson murder case; (2) indict and prosecute Frank Lee Simpson and others named by Stacy Simpson Moran as her mother's murderer(s); (3) complete "all investigation, indictment, and prosecution of the killer(s) of Gail Simpson within 180 days" of the issuance of the injunction; and (4) assemble a grand jury to investigate "possible coverup[s] of crimes, denial of full due process, and drug related activities" in Bates and Jasper Counties. Plaintiff also seeks reimbursement for costs connected with this lawsuit and other litigation. *Id.* at 4–5.

## III. Preliminary Matters

Before discussing the court's substantive rulings, it is necessary to record the court's disposition of a number of matters during the January 15, 1992 hearing.

First, the court denied plaintiff's "Application to Disqualify Biased/Prejudiced Judge." The court also denied plaintiff's accompanying request that this case be assigned to a federal district judge from a state other than Missouri, who was appointed by a Democratic president, who is not a member of the Missouri Bar Association or the Free Masons, and who is fundamentally fair.

Second, the court denied plaintiff's second motion for a continuance. It should be noted that the court granted plaintiff's first motion

for a continuance in an order dated January 8, 1992.

Third, the court held in abeyance, and ultimately denied, plaintiff's request for the issuance of a number of subpoenas.

Fourth, the court notes that it "grants" plaintiff's "Demand for Consideration of Letters and Motions, Etc. Submitted By Members of the Public in Regards to this Matter." The court did not rule on plaintiff's "demand" during the January 15, 1993 hearing. However, the court has reviewed the materials submitted by various citizens in connection with this case, including the "Petition that this Court Listen Seriously to Marvalene Pankey and Her Call for Truth and Justice" submitted by Charlotte Vogel.

Fifth, the court seeks to reassure plaintiff that while she was not allowed to read her lengthy "Response to the Order to Show Cause" into the record during the hearing, her Response has been filed, reviewed by the court, and is part of the record for appeal.

Finally, the court directs the clerk to send a copy of this order to plaintiff at the following address:

> V. Marvalene Pankey
> c/o Box 154
> Willard, Missouri 65781

The Montrose, Missouri address listed on plaintiff's complaint and application for *in forma pauperis* status are no longer valid.

*IV. Grounds for Dismissal*

■ Plaintiff claims that she cannot afford to pay the fees and costs associated with filing a complaint in federal court. Under 28 U.S.C. § 1915, a court may grant a plaintiff leave to proceed without prepayment of fees and costs if the plaintiff is indigent. *See id.* § 1915(a); Local Rule 9. However, the court may also dismiss a case if the plaintiff's "allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." 28 U.S.C. § 1915(d); *see Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989). "Frivolous" complaints are those which "lack an arguable basis in law or fact" because they contain "inarguable

legal conclusions" or "fanciful factual allegation[s]." *Id.*

On the basis of the evidence adduced at the hearing and the materials now before it, the court finds that the present action is frivolous and that this case should be dismissed because: (1) plaintiff's claims lack an arguable basis in fact; (2) plaintiff's jurisdictional allegations are patently without merit; (3) plaintiff is utterly without standing to pursue this action; and (4) federal statutory and decisional law prohibits the court from granting plaintiff the relief she requests.

A. This Case is Frivolous

Under 28 U.S.C. § 1915(d), a court may dismiss a complaint that contains factual contentions that are clearly baseless and describe "fantastic or delusional scenarios." *Neitzke* at 324, 327, 109 S.Ct. at 1831, 1833.

■ The gist of plaintiff's complaint is that the defendants have unlawfully refused to indict and punish Frank Lee Simpson for the murder of his wife, and instead have wrongfully punished Stacy Simpson Moran for the crime. Plaintiff alleges that this state of affairs is the result of a conspiracy of lawyers. Specifically, plaintiff asserts that former Missouri Attorney General William Webster and other members of The Missouri Bar have conspired to control the Gail Simpson murder case and to prevent Frank Lee Simpson from being indicted for the murder of his wife. *See* Pl.'s Resp. Order Show Cause at 10, 12.

The court finds that these factual allegations are fanciful, baseless, and delusional, and that this case lacks an arguable basis in fact. Accordingly, the court dismisses this case as frivolous pursuant to 28 U.S.C. § 1915(d).

B. This Court Lacks Jurisdiction

Plaintiff asserts a number of grounds upon which, if meritorious, this court could exercise jurisdiction over this case. For the reasons set forth below, the court finds that plaintiff's jurisdictional allegations are patently without merit. Accordingly, this case is dismissed because this court lacks subject matter jurisdiction.

### 1. Diversity Jurisdiction

Plaintiff alleges this case falls within this court's jurisdiction over diversity cases. *See* 28 U.S.C. § 1332. This assertion is patently incorrect.

■ For diversity jurisdiction to exist, there must be complete diversity among the parties, *i.e.*, no plaintiff can be a citizen of the same state as any defendant. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978). In the present case, plaintiff Pankey and the defendants are all citizens of Missouri. Thus, complete diversity is lacking and diversity jurisdiction therefore does not exist.

Accordingly, the court finds that it does not have jurisdiction over this case pursuant to 28 U.S.C. § 1332.

### 2. 28 U.S.C. § 1651

Plaintiff asserts this court has jurisdiction pursuant to 28 U.S.C. § 1651 (the "All Writs Act"). This assertion is also patently incorrect.

■ 28 U.S.C. § 1651(a) allows federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." *Id.* Section 1651 does not, by itself, provide an independent basis for jurisdiction. Instead, it may be invoked only in aid of jurisdiction already possessed by the court on some other ground. *See Brittingham v. U.S.C.I.R.*, 451 F.2d 315, 317 (5th Cir.1971); *Benson v. State Bd. of Parole & Probation*, 384 F.2d 238, 239–40 (9th Cir.1967), *cert. denied*, 391 U.S. 954, 88 S.Ct. 1860, 20 L.Ed.2d 869 (1968). In the present case, the court cannot discern any possible ground that would allow it to exercise jurisdiction over this case. Thus, the court has no basis for exercising the powers granted it by 28 U.S.C. § 1651.

Accordingly, the court finds that it clearly has no jurisdiction over this case by virtue of 28 U.S.C. § 1651.

### 3. Fed.R.Civ.P. 81(b)

Plaintiff asserts this court has jurisdiction pursuant to Fed.R.Civ.P. 81(b). This assertion is obviously incorrect.

■ Fed.R.Civ.P. 81(b) provides that the "writs of scire facias and mandamus are abolished," but that similar relief may still be obtained by appropriate action or motion under the rules. *Id.* Rule 81(b) merely acknowledges by rule that which has been accomplished by statute in 28 U.S.C. § 1651. As such, Rule 81(b) does not provide an independent basis for jurisdiction.

Accordingly, the court finds that it is without jurisdiction over this case pursuant to Fed.R.Civ.P. 81(b).

### 4. 28 U.S.C. § 1361

Plaintiff asserts this court has jurisdiction pursuant to 28 U.S.C. § 1361. Again, this assertion is patently incorrect.

■ Under 28 U.S.C. § 1361, a federal district may "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." *Id.* Obviously, an action under section 1361 will not lie unless the defendants are officers or employees of the United States or a federal agency. *Id.; see also Burnett v. Superior Court of Marin County*, 573 F.Supp. 345, 346 (N.D.Cal.1983). In the present case, none of the named defendants are officers or employees of the United States or a federal agency.

Accordingly, the court finds that it does not have jurisdiction over this case pursuant to 28 U.S.C. § 1361.

### 5. 18 U.S.C. § 4

Plaintiff asserts this court has jurisdiction pursuant to 18 U.S.C. § 4. This assertion is patently incorrect.

Under 18 U.S.C. § 4, it is a crime for a person "having knowledge of the actual commission of a felony cognizable by a court of the United States ... [to conceal and not] make known the same to some judge or other person in civil or military authority under the United States." *Id.*

■ Plaintiff's reliance on 18 U.S.C. § 4 is misplaced. First, plaintiff has not provided any facts from which the court could reasonably conclude that one of the defendants committed the crime defined by 18 U.S.C. § 4. Second, 18 U.S.C. § 4 defines a criminal offense and does not provide civil complainants with a private right of action. *See Dugar v. Coughlin,* 613 F.Supp. 849, 852 n. 1 (S.D.N.Y.1985). Thus, plaintiff cannot base a civil cause of action on 18 U.S.C. § 4, and cannot invoke that statute as a jurisdictional basis for her present complaint. *See id.*

Accordingly, the court finds that it does not have jurisdiction over this case pursuant to 18 U.S.C. § 4.

### 6. Federal Question Jurisdiction

In her jurisdictional allegations, plaintiff states that "defendants are violating the constitutional rights of the citizens of Mo. to have real murderers held accountable for their crimes." Compl. at 7. Plaintiff further states that "defendants have failed to protect me and others both from having Frank Lee Simpson possibly murder again and having taxpayer's [sic] money wasted trying to somehow force Stacy Simpson to prove herself innocent of her father's crime." *Id.* These allegations are connected to plaintiff's claim that the defendants have conspired to prevent Frank Lee Simpson from being indicted for the murder of his wife.

Plaintiff's reference to "constitutional rights" and her claim that the state has failed to protect her and wasted taxpayers' money suggests that plaintiff believes the defendants have invaded her constitutional rights. Thus, the above-quoted language may be an attempt to state a claim under 42 U.S.C. § 1983. A section 1983 claim, of course, would "arise under" federal law and fall within this court's jurisdiction over cases that raise federal questions. *See* 28 U.S.C. § 1331.

■ The court finds that plaintiff has failed to state a claim under 42 U.S.C. § 1983. First, assuming that plaintiff has standing to assert the rights of "Mo. citizens" and "others," which she does not, the court has been unable to locate a constitutional right to have criminals held accountable for their crimes under state law or to prevent the waste of state tax revenues. Second, plaintiff's allegation that "Frank Lee Simpson might possibly murder again" is not sufficient to state a claim under 42 U.S.C. § 1983. At a minimum, a conspiracy claim under section 1983 requires a plaintiff to have suffered an *actual* deprivation of his or her federal rights. *Dixon v. City of Lawton,* 898 F.2d 1443, 1449 (10th Cir.1990) (citing cases). Plaintiff's unsupported contention that Frank Lee Simpson might harm her fails this fundamental requirement for the pleading of a valid section 1983 claim.

In sum, plaintiff's failure to assert a recognized federal right or to demonstrate an actual deprivation of a federally protected interest is fatal to the assertion of a claim under 42 U.S.C. § 1983 in the present case. Accordingly, the court finds that this case does not "arise under" federal law and therefore does not fall within this court's federal question jurisdiction under 28 U.S.C. § 1331.

### C. Plaintiff Lacks Standing

In addition to being frivolous and beyond this court's jurisdiction, the court finds that plaintiff is utterly without standing to pursue this action. Accordingly, the court dismisses this case because plaintiff is not entitled to bring it.

### 1. Plaintiff's "Powers of Attorney" Are Invalid

In part, plaintiff brings this action as "power of attorney" for Stacy Simpson [Moran]. Plaintiff has attached two documents to her complaint which purport to be valid powers of attorney. *See* Compl. Exs. 1 ("non-revocable Power of Attorney" incorporated in March 15, 1991 "Petition for Writ of Mandamus and-or Appeal for Such as Needed") & 1A (power of attorney dated September 18, 1991). Neither of these documents specifies a date of termination or otherwise indicates how long the parties intended plaintiff's agency to last.

■ Typically, if an agreement is silent as to the duration of an agency relationship, the courts presume the relationship termi-

nates when one party notifies the other that the relationship is at an end or when the agent becomes aware of circumstances which reasonably should indicate that the principal no longer agrees to be represented by the agent. *See* Restatement (Second) of Agency § 108.

■ At the January 15, 1993 hearing, Stacy Simpson Moran's retained counsel, John P. O'Connor, provided the court with a copy of an August 28, 1992 state court motion to quash "any and all previous powers of attorney given to V. Marvalene Pankey on behalf of [Stacy Simpson]."[3] *See* Ct.'s Ex. 1. The court finds that this motion constitutes notice to plaintiff that Stacy Simpson has terminated the agency relationship between them. The court further finds that "any and all" powers of attorney held by plaintiff that were issued prior to August 28, 1992 and purport to authorize plaintiff to act on behalf of Stacy Simpson have been revoked and are no longer valid.

Accordingly, the court finds that plaintiff does not have standing to assert the rights of Stacy Simpson in the present case as Stacy Simpson's "power of attorney."

### 2. *Plaintiff Lacks Standing In Her Own Right*

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). The court finds that plaintiff, as an individual, does not have standing to bring this action.

■ To have this court adjudicate the present dispute, plaintiff must meet all six of the standing requirements identified by the Supreme Court. *See* Erwin Chemerinsky, *Federal Jurisdiction* § 2.3.1 (1989). Three of these prerequisites are set out in *Valley Forge*. To have standing, Article III re-

quires a plaintiff to demonstrate three things: (1) that he or she has suffered or imminently will suffer an actual injury; (2) that the injury is fairly traceable to the conduct or actions of the defendants; and (3) that a favorable federal court decision will effectively provide redress for the injury alleged. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). In addition, plaintiff must "satisfy" three additional prudential standing requirements, *see* Chemerinsky, *supra*, at § 2.3.1, only two of which are relevant here: (1) A party may assert only his or her own rights and cannot raise the rights of third parties who are not before the court; and (2) A party may not sue as a citizen or as a taxpayer who shares a grievance in common with all other citizens or taxpayers. *Warth*, 422 U.S. at 499, 95 S.Ct. at 2205; *see also Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 94 S.Ct. 2925, 2962, 41 L.Ed.2d 706 (1974).

■ Applying these constitutional and prudential requirements to the present case, the court finds this case should be dismissed because plaintiff lacks standing. First, the court finds that plaintiff has not met the constitutional requirement of an injury in fact. To satisfy this requirement for standing, plaintiff must demonstrate that she is threatened by an injury that is both "real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983); *see also Valley Forge*, 454 U.S. at 472, 102 S.Ct. at 758. In the present case, plaintiff has failed to explain or provide any factual support for her allegations that she might be "Frank Lee Simpson's next victim," Compl. at 2, and that her property is in jeopardy. These allegations are conjectural and hypothetical, and do not satisfy the requirement that plaintiff allege an actual or

---

**3.** Plaintiff argued that her "powers of attorney" were still effective because an affidavit attached to Stacy Simpson Moran's August 28, 1992 motion to quash referred to "V. Marvalene Simpson," not "V. Marvalene Pankey." *See* Ct.'s Ex. 1. The court found that the affidavit did not alter the legal effect of the motion, which re-

voked any and all powers of attorney issued to "V. Marvalene Pankey" prior to August 28, 1992. On the basis of John O'Connor's testimony, the court also found that the affidavit's reference to "V. Marvalene Simpson" was a clerical error, and that the affidavit was intended to refer to "V. Marvalene Pankey."

imminent injury in fact. *See Lyons*, 461 U.S. at 101–02, 103 S.Ct. at 1664–65.

■ Second, the court finds the fact that plaintiff's claims are based almost entirely on the rights of Stacy Simpson violates the prudential principle that prohibits a litigant from asserting the rights of third parties who are not before the court. *See Warth*, 422 U.S. at 499, 95 S.Ct. at 2205. Plaintiff's attempt to raise the rights of "Mo. citizens" and "others" violates the same prudential principle, and is rejected for that reason.

■ Third, the court finds that plaintiff's effort to halt the alleged waste of "taxpayer's money" violates the prudential principle that prohibits a party from asserting claims which he or she shares in common with all other taxpayers. *See id.*

■ Fourth, the court finds that plaintiff's allegations that she has a personal interest in the outcome of this case "equal to what any mother would have for a foster daughter," and "equal to what any foster grandmother would have for a grandchild," Pl.'s Resp. Order Show Cause at 11, are absurd. Plaintiff Pankey is not Stacy Simpson Moran's foster mother, nor the foster grandmother of Stacy Simpson Moran's son.

Accordingly, the court finds that this case should be dismissed because plaintiff lacks standing to bring this action before the court.

### D. The Anti–Injunction Act and the Abstention Doctrine

Finally, as the court advised plaintiff at the January 15, 1992 hearing, even if this case was not frivolous, this court had jurisdiction, and plaintiff had standing to bring this action, plaintiff's request for an injunction of the state court criminal prosecution of Stacy Simpson Moran is beyond the power of this court. In fact, granting plaintiff's request for injunctive relief would have required this court to violate both an act of Congress and a long-standing Supreme Court precedent.

■ First, enjoining the state from prosecuting Stacy Simpson Moran would have violated the federal Anti–Injunction Act. 28 U.S.C. § 2283 states: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." *Id.* As the Supreme Court has stated, the Act is an "absolute prohibition against any injunction of any state-court proceedings." *Vendo Co. v. Lektro–Vend Corp.*, 433 U.S. 623, 630, 97 S.Ct. 2881, 2887, 53 L.Ed.2d 1009 (1977). While the Act sets forth three narrow exceptions to its terms, the present case did not fall within any of those exceptions. *See id.; see also Vendo Co.*, 433 U.S. at 630–31, 97 S.Ct. at 2887–88 (stating that the exceptions to the Anti–Injunction Act are to be construed narrowly); *Amalgamated Clothing Workers of America v. Richman Bros. Co.*, 348 U.S. 511, 514, 75 S.Ct. 452, 454, 99 L.Ed. 600 (1955) (stating that the prohibition imposed by the Anti–Injunction Act "is not to be whittled away by judicial improvisation"). Thus, 28 U.S.C. § 2283 expressly prohibited this court from granting plaintiff's request for an injunction of the state court criminal proceedings against Stacy Simpson Moran.

Second, enjoining the state from prosecuting Stacy Simpson Moran would have violated the express holding of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). In *Younger*, the Supreme Court unequivocally held that federal courts may not enjoin pending state court criminal prosecutions. *Id.* at 41, 91 S.Ct. at 749. While the *Younger* Court identified three exceptions to the prohibition against enjoining state criminal prosecutions, the present case did not fall within any of those exceptions. Thus, a long-standing Supreme Court precedent prohibited this court from granting plaintiff's request for an injunction of the state's pending prosecution of Stacy Simpson Moran.

Accordingly, even if the record in the present case did not reflect the various flaws noted in previous sections of this order, the court is prohibited from enjoining the state's prosecution of Stacy Simpson Moran by an act of Congress and Supreme Court precedent, and obviously will not attempt to do so.

### V. Sanctions

■ In orders dated December 29, 1992 and January 8, 1993, the court notified plain-

tiff that her conduct might warrant the imposition of sanctions. Viewing matters as a whole, the court has serious concerns about plaintiff's practice of attempting to represent the interests of third parties, *pro se*, by filing lawsuits on their behalf. Nevertheless, the court declines to sanction plaintiff pursuant to Fed.R.Civ.P. 11 or impose a broad restriction on her right to make filings without prepayment of fees and costs. However, the court agrees with Judge Hunter that plaintiff's unsettling interest in the affairs of Stacy Simpson Moran is prejudicial to the effective administration of justice. Accordingly, for the reasons set forth below, the court joins Judge Hunter in permanently enjoining plaintiff Pankey from filing any complaint, pleading, or motion on behalf of Stacy Simpson Moran.

### A. Rule 11

■ Plaintiff's suggestions to the contrary notwithstanding, plaintiff is subject to "lawyer[-]created sanctions," Pl.'s Resp. Order Show Cause at 7, 21–22, including sanctions imposed pursuant to Rule 11. By its terms, Rule 11 applies to parties, as well as lawyers, including *pro se* plaintiffs. *Harris v. Heinrich*, 919 F.2d 1515, 1516 (11th Cir. 1990). However, when a *pro se* plaintiff makes a filing, "the court must take into account a plaintiff's *pro se* status when it determines whether the filing was reasonable." *Id.*

In relevant part, Fed.R.Civ.P. 11 provides that the signature of a party on a pleading or other filing constitutes a certificate that "to the best of the signer's knowledge, information, and belief formed after reasonable inquiry [the filing] is well grounded in fact and is warranted by existing law ... and that it is not interposed for any improper purpose...." *Id.* If a pleading or filing is signed in violation of these standards, Rule 11 provides that the court "*shall* impose ... an appropriate sanction" upon the person who signed the filing, the party represented by the signer, or both. *Id.* (emphasis added).

Thus, Rule 11 requires the court to impose sanctions when a person who signs a pleading fails to conduct a reasonable inquiry into the facts and law supporting the pleading.

*See Harris*, 919 F.2d at 1516; *Crookham v. Crookham*, 914 F.2d 1027, 1029 (8th Cir. 1990). While Rule 11 makes sanctions mandatory if its provisions are violated, "whether a violation has occurred is a matter for the court to determine, and this determination involves matters of judgment and degree." *Id.* at 1029. An "appropriate sanction" under Rule 11 may include monetary sanctions, an oral reprimand, dismissal, or other measures appropriate to the circumstances. *See* Fed. R.Civ.P. 11; *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 878 (5th Cir.1988).

■ After thoughtful consideration, the court finds that plaintiff did not violate Fed. R.Civ.P. 11 when she signed and filed the instant complaint. Obviously, plaintiff's frivolous pleadings lack a reasonable legal or factual basis. However, taking plaintiff's *pro se* status and her allegation of poverty into account, *see Harris*, 919 F.2d at 1516, the court cannot say that plaintiff's inquiry into the facts and law supporting her pleading did not comply with Rule 11. In this regard, the court notes that while plaintiff evidently grasps the basics of legal research, she is severely limited in her ability make effective use of legal materials and to apply the law to objective reality.

Accordingly, the court concludes that, in the present case, it would not be appropriate to sanction plaintiff pursuant to Fed.R.Civ.P. 11.

### B. Filing Restrictions

■ The baseless and frivolous nature of the present case is consistent with plaintiff's previous filings in this court. Having reviewed the present case and plaintiff's history of filing meritless actions in this district, the court concludes that it must take steps to protect the judicial process, Stacy Simpson Moran, and potential defendants from plaintiff's acute interest in filing lawsuits on behalf of Stacy Simpson Moran. The court finds that the present record does not warrant imposing a broad restriction on plaintiff's filing privileges. However, for the reasons set forth below, the court joins Judge Hunter in permanently enjoining plaintiff

Pankey from filing any complaint, pleading, or motion on behalf of Stacy Simpson Moran.

The courts properly view restricting a person's access to the judicial system as an extreme measure, particularly when an indigent is involved. *See, e.g., Abdul–Akbar v. Watson,* 901 F.2d 329, 332 (3d Cir.1990) (discussing the right of access to the courts); *In re Green,* 669 F.2d 779, 785 (D.C.Cir.1981) (similar). However, the courts also recognize that frivolous, bad faith claims waste scarce judicial resources and undermine the integrity of the judicial process. *E.g., Watson,* 901 F.2d at 332; *People v. Carter,* 678 F.Supp. 1484, 1486 (D.Colo.1986). Furthermore, defendants have a right to be free from frivolous and abusive litigation, and the federal courts "have a clear obligation to exercise their authority to protect litigants from such behavior." *Id.* (quoting *Chatmon v. Churchill Trucking Co.,* 467 F.Supp. 79 (W.D.Mo.1979) (Hunter, J.)). Thus, when a party engages in a continuous, well-documented pattern of conduct that amounts to an abuse of the judicial process, and it appears likely that this behavior will continue, it is well established that the court may impose appropriate restrictions on that party's right to file pleadings without prepayment of fees and costs. *See In re Green,* 669 F.2d at 779; *Green v. White,* 616 F.2d 1054 (8th Cir.1980); *In re Tyler,* 677 F.Supp. 1410 (D.Neb.1987), *aff'd,* 839 F.2d 1290 (8th Cir. 1988).

As is discussed more fully below, plaintiff Pankey does not file lawsuits in federal court to vindicate her own rights. Instead, in one fashion or another, plaintiff Pankey's filings purportedly seek to enforce the rights of Stacy Simpson Moran. In fact, a search of the court's records reveals that, including the present case, plaintiff Pankey has filed at least five cases over the past two years in which she has attempted to assert and protect the rights of Stacy Simpson Moran. All of those cases have been dismissed, either because they were frivolous or because plaintiff Pankey lacked standing. *See Pankey v. Webster, et al.,* No. 92–1019–CV–W–3 (W.D.Mo. order of dismissal filed Dec. 11, 1992) (Hunter, J.); *Simpson v. Nation, et al.,* 90–0386–CV–W–9–3 (W.D.Mo. order of dismissal filed July 5, 1990) (Hunter, J.); *Pankey v. Pelofsky, et al.,* No. 90–0388–CV–W–8 (W.D.Mo. order of dismissal filed July 3, 1990); *Simpson v. Pelofsky, et al.,* No. 90–0387–CV–W–3–P (W.D.Mo. order of dismissal filed June 28, 1990) (Hunter, J.).[4]

An examination of these cases reveals that plaintiff Pankey is a textbook example of an officious intermeddler. She has attempted to sue virtually everyone associated with the Stacy Simpson Moran case. Among others, plaintiff Pankey has brought suit or attempted to bring suit against Stacy Simpson Moran's attorneys, the judges involved in her case, state officials, and her grandmother.[5] Plaintiff Pankey's pleadings often contain outlandish and delusional allegations, and frequently exaggerate trivial events into grounds for a federal lawsuit. While plaintiff Pankey's filings seek a variety of relief, she typically requests that the court restrain the named defendants from participating in the Stacy Simpson Moran case without plaintiff Pankey's consent. In this regard, the court

---

**4.** In addition to the cases cited above, this court recently dismissed *Simpson v. Jackson County Detention Center, et al.,* 91–0069–CV–W–8 (W.D.Mo. order of dismissal filed Jan. 4, 1993) (Stevens, J.). That case did not list plaintiff Pankey as a party, but bore the unmistakable marks of her handiwork. The court also notes that Judge Hunter, in his order dated December 11, 1992, recounted plaintiff Pankey's repeated attempts to participate in Stacy Simpson Moran's petition for federal habeas corpus relief. Other cases attributed to plaintiff Pankey include: *Wilson v. Groose,* No. 92–0608–CV–W–1–P (W.D.Mo. order of dismissal filed Nov. 3, 1992 W.D.Mo.) (Whipple, J.); *Pankey v. Carolina Family Enters., Inc.,* No. 89–3383–CV–S–4 (W.D.Mo. order of dismissal filed July 1, 1991) (Clark, J.); *Ivy v. Caspari,* No. 91–0031–CV–W–3 (W.D.Mo.

filed Jan. 10, 1991); and *Vaughn v. Groose,* No. 90–0804–CV–W–3 (W.D.Mo. filed Aug. 31, 1990).

**5.** Evidently, plaintiff Pankey intends to continue her practice of suing judges. In support of her January 14, 1992 motion for an extension of time in the present case, plaintiff Pankey stated that she had been busy researching the feasibility of filing "civil rights/RICO suit(s)" against Judge Hunter. Plaintiff Pankey's Notice of Appeal from the order dismissing *Pankey v. Webster, et al.,* No. 92–1019–CV–W–3 (W.D.Mo. order of dismissal filed Dec. 11, 1992), contains the ludicrous claim that Judge Hunter's order of December 11, 1992 is "filled with ... threats to petitioner's life by Judge Hunter."

**564**

notes that plaintiff Pankey's attempts to interfere with the relationship between Stacy Simpson Moran, her attorneys, and other people in Stacy Simpson Moran's life has not been limited to the filing of federal lawsuits.[6]

Furthermore, the court is convinced that Stacy Simpson Moran's recent acquittal in state court will not halt plaintiff Pankey's efforts to file lawsuits on her behalf. Instead, the record as a whole strongly suggests that plaintiff Pankey's legal activities are as much motivated by personality and psychological factors which this court is not qualified to diagnose as by plaintiff Pankey's desire to vindicate the rights of Stacy Simpson Moran.

Based on the discussion set forth above, the court finds that plaintiff Pankey, purporting to act on behalf of Stacy Simpson Moran, has filed at least five frivolous or otherwise meritless lawsuits in this court, and that those lawsuits have contained delusional and abusive allegations, resulted in a waste of judicial resources, and have threatened to subject the named defendants to the stigma and cost of groundless litigation. In addition, the court finds that plaintiff Pankey is likely to continue filing lawsuits on behalf of Stacy Simpson Moran unless this court takes preventive measures.

Accordingly, the court concludes that plaintiff Pankey's filings on behalf of Stacy Simpson Moran detract from the effective administration of justice. The court therefore endorses and joins the Honorable Elmo B. Hunter in permanently restraining plaintiff V. Marvalene Pankey from filing any complaint, pleading, or motion on behalf of Stacy Simpson Moran.

## VI. Conclusion

For the reasons set forth above, it is

ORDERED that this case is dismissed because this case is frivolous, *see* 28 U.S.C. § 1915(d), because this court lacks jurisdic-

tion, because plaintiff's alleged "powers of attorney" are void and invalid, and because plaintiff lacks standing as an individual to bring this matter before the court. It is further

ORDERED that plaintiff V. Marvalene Pankey is permanently enjoined from filing any complaint, pleading, or motion on behalf of Stacy Simpson Moran.

---

6. Stacy Simpson Moran's attorney, John P. O'Connor, furnished the court with copies of several letters addressed to him and signed by plaintiff Pankey. The court will include three of those letters—dated October 5, 1992; November 28, 1992; and January 2, 1993—in the record. The thrust of these letters is that Mr. O'Connor is

incompetent, that plaintiff is locked in a struggle with Satan and his agents, and that Mr. O'Connor, Stacy Simpson Moran's husband ("J.J."), and others are somehow controlling Stacy and "profit[ing] from Stacy's pain." These letters contain language that is truly disturbing, and sometimes assume a threatening tone.