**PENN ALLEGH COAL COMPANY, INC., Appellee,**

v.

**Michael H. HOLLAND, Marty D. Hudson, Elliot A. Segal and A. Frank Dunham, as Trustees of the UMWA 1992 Benefit Plan, Appellants.**

No. 98–7161.

United States Court of Appeals, District of Columbia Circuit.

Argued April 26, 1999.

Decided Aug. 20, 1999.

Peter Buscemi, with whom Paul A. Green and David W. Allen were on the briefs, argued the cause for appellants.

E. Preston Rutledge, with whom John R. Woodrum was on the brief, argued the cause for appellee.

Before EDWARDS, Chief Judge, ROGERS, Circuit Judge, and BUCKLEY, Senior Circuit Judge.

Opinion for the court filed by Senior Judge BUCKLEY.

BUCKLEY, Senior Judge:

The trustees of a health benefit plan created by the Coal Industry Retiree Health Benefit Act of 1992 claim that Penn Allegh Coal Company is obliged to pay premiums to the plan because it is responsible, under section 9711(b) of the Act as codified, 26 U.S.C. § 9711(b) (1994), for the continuing payment of the health benefits due a former employee under an earlier industry-wide labor agreement. Penn Allegh denies liability on the grounds that the former employee, who was a disability pensioner, had not met the "age and service requirements" necessary to qualify for benefits under section 9711(b) and that he had not "retired from the coal industry" by September 30, 1994, as required by the section. The district court granted summary judgment in favor of Penn Allegh based on the first ground and therefore did not reach the second.

Because we conclude that Congress intended to ensure the continued payment of the health benefits due all coal industry retirees covered by the Act, including those of disability pensioners, we hold that section 9711(b) must be construed to cover any pensioner who qualified for disability retirement on or before the statutory cutoff date of February 1, 1993, and retired from the coal industry on or before September 30, 1994. Accordingly, we reverse and remand the case so that the district court may consider Penn Allegh's remaining claim that the employee failed to retire by the September deadline.

## I. BACKGROUND

### A. The Coal Act

For a number of years, the employees of the members of the Bituminous Coal Operators' Association ("Association") were covered by health benefit plans established pursuant to collective bargaining agreements between the Association and the United Mine Workers of America ("UMWA"). In the 1980's, these plans began to suffer financial difficulties because a growing number of those members ("signatory operators") went out of business, withdrew from the agreements, or otherwise defaulted on their obligations to the plans established for the benefit of employees. Because of these and other developments, the various plans began to experience deficits that reached a level of approximately $110 million by 1990. *See Eastern Enterprises v. Apfel,* 524 U.S. ——, 118 S.Ct. 2131, 2140, 141 L.Ed.2d 451 (1998).

In March 1990, then-Secretary of Labor Elizabeth Dole appointed an Advisory Commission on United Mine Workers of America Retiree Health Benefits ("Coal Commission"), which she tasked with developing a "solution for assuring that orphan retirees in the [various benefit trusts] will continue to receive promised medical care." The Secretary of Labor's Advisory Comm'n on United Mine Workers of America Retiree Health Benefits, Coal Comm'n Report 2 (1990), *reprinted in* Joint Appendix ("J.A.") at 95. Later that year the Commission issued a report in which it noted that "coal miners have been promised and guaranteed health care benefits for life." Coal Comm'n Report, Executive Summary at vii, *reprinted in* J.A. at 86. It then submitted two alternative statutory proposals for ensuring that these promises would be kept. *Id.* at viii, *reprinted in* J.A. at 87.

After conducting hearings on the report, in which it was advised that more than 120,000 retirees might not receive the benefits promised to them through the collec-

tive bargaining process, Congress acted on the Commission's recommendations and passed the Coal Industry Retiree Health Benefit Act of 1992, Pub.L. No. 102–486, 106 Stat. 3036 (codified at 26 U.S.C. §§ 9701–22 (1994)) ("Coal Act" or "Act"). *Eastern Enters.,* 118 S.Ct. at 2141–42. An explicit purpose of the Act was "to provide for the continuation of a privately financed self-sufficient program for the delivery of health care benefits to the beneficiaries of [multi-employer benefit] plans." Coal Act, Pub.L. No. 102–486, § 19142(b)(3), 106 Stat. 3037 (1992) (codified as note following 26 U.S.C. § 9701 (1994)).

This case is concerned with Subchapter C of the Coal Act, which ensures the continued payment of health benefits to certain retired coal mining employees through either an individual employer plan ("IEP") or a statutory trust fund. Part I of the subchapter is addressed to retired miners who were covered by an IEP maintained pursuant to a 1978 or subsequent coal wage agreement. It requires that the last signatory operator to employ a retiree continue to provide him with health benefits under its IEP if he was either(a) receiving retiree health benefits as of February 1, 1993, 26 U.S.C. § 9711(a), or (b) "met the age and service requirements for eligibility to receive benefits under [the IEP]" by that date and had not "retired from the coal industry after September 30, 1994." *Id.* § 9711(b)(1).

Part II of the subchapter establishes a new statutory trust, the United Mine Workers of America 1992 Benefit Plan ("1992 Plan"), *id.* § 9712(a), which provides health benefits to two categories of beneficiaries: those who "but for the enactment of [the Coal Act] would be eligible to receive benefits from the [1950 or 1974 UMWA Benefit Plans], based upon age and service earned as of February 1, 1993," id. § 9712(b)(2)(A); and those "with respect to whom coverage is required to be provided under section 9711, but who do[ ] not receive such coverage from the applicable last signatory operator," *id.* § 9712(b)(2)(B). The 1992 Plan is financed by the operators who were signatories to

the 1988 coal wage agreement between the Association and the UMWA. These signatory operators are required to pay both an annual "prefunding premium" for all eligible and potentially eligible beneficiaries of the Plan attributable to them and a monthly "per beneficiary" premium for each beneficiary attributable to them who is actually receiving benefits under the Plan. *Id.* § 9712(d)(1)(A), (B).

B. Factual Background

Penn Allegh Coal Company, Inc. ("Penn Allegh" or "company") was a signatory to the 1988 coal wage agreement. That agreement provided that in order to qualify for health benefits as a disabled pensioner, an employee must be eligible for Social Security Disability Insurance benefits. In August 1992, Richard J. Ferrari, a Penn Allegh employee who had been injured in a mine accident, applied for disability benefits with the Social Security Administration. More than two years later, on December 8, 1994, that Administration determined that Mr. Ferrari was indeed disabled and that December 20, 1990, was the effective date of his disability.

On January 12, 1995, Mr. Ferrari applied for a disability pension, which was granted and dated retroactively to July 1, 1992, the day after he left active employee status. Mr. Ferrari then applied to Penn Allegh for health benefits under its IEP. The company determined that he was not eligible to receive them on the ground that he had not applied for his pension, and thereby "retired," by September 30, 1994, as required by section 9711(b). Mr. Ferrari thereafter sought and received benefits from the 1992 Plan pursuant to sections 9711(b) and 9712(b)(2)(B) of the Act.

In April 1996, the Trustees of the 1992 Plan ("Trustees") informed Penn Allegh that Mr. Ferrari had been enrolled in and received benefits from the Plan retroactive to February 1, 1993, and demanded that the company pay per beneficiary premiums on his behalf. Penn Allegh disagreed with the Trustees' conclusion that Mr. Fer-

rari was eligible for coverage under Penn Allegh's IEP and the 1992 Plan and filed this action in district court. In its complaint, the company alleged that the Trustees had no authority, under section 9712(b)(2), to enroll Mr. Ferrari because he had not retired by September 30, 1994, as required by section 9711(b), and sought a declaration that it had no obligation to pay premiums on his behalf. The Trustees responded with a counterclaim in which they asked the court to declare that Penn Allegh had a duty, under section 9711, to provide benefits directly to Mr. Ferrari and, under section 9712, to pay prefunding and per beneficiary premiums to the 1992 Plan.

The parties filed cross motions for summary judgment that addressed two issues: (1) whether, in order to qualify for benefits under section 9711(b), a disabled coal industry retiree had to be eligible for an "age and service" pension as of February 1, 1993; and (2) whether Mr. Ferrari was ineligible for such benefits because he did not "retire" from the coal industry, within the meaning of the Act, on or before September 30, 1994. The district court granted summary judgment in favor of Penn Allegh on the first issue and therefore did not reach the second. It concluded that because section 9711(b) specified that a retiree must meet "age and service requirements" in order to qualify for IEP coverage, it applied only to individuals who qualified for a pension by virtue of age and length of service, and not as a consequence of an injury. Accordingly, the court also held that Mr. Ferrari was not eligible for benefits from the 1992 Plan because section 9712(b) "bases eligibility on age and service or on entitlement to coverage under § 9711." *Penn Allegh Coal Co. v. Holland,* No. 97–0121, at 9–10 (D.D.C. July 22, 1998).

## II. DISCUSSION

■ Section 9711(b) of the Coal Act assures continued health benefits coverage under an IEP for any individual who has retired from the coal industry on or before September 30, 1994, and

who, as of February 1, 1993, is not receiving retiree health benefits under the individual employer plan maintained by the last signatory operator pursuant to a 1978 or subsequent coal wage agreement, but *has met the age and service requirements* for eligibility to receive benefits under such plan as of such date. . . .

26 U.S.C. § 9711(b)(1) (emphasis added).

The controversy in this case centers on the meaning to be given to the italicized language. The Trustees maintain that the age and service requirements cannot be read to disqualify disability pensioners under section 9711(b) for three reasons. First, they point out that the section speaks of the "age and service requirements for eligibility *to receive benefits*"; it does not state that the section applies only to miners who have met the age and service requirements for retirement. Second, because section 9711(a) applies to all pensioners, including those retired because of disability, Penn Allegh's construction would lead to the absurd result of treating differently two miners injured in the same accident merely because the Social Security paperwork for one of them was completed before February 1993 while that for the other took a month or so longer. Finally, they maintain that Penn Allegh's construction would frustrate the purpose of the Act, which is to ensure that all retirees continue to receive the health benefits they had bargained for. For these reasons, the Trustees insist that the language of section 9711(b) must be interpreted to require no more than that an individual meet whatever age and service requirements are applicable to the kind of pension he is qualified to receive.

For its part, Penn Allegh insists that section 9711(b) unambiguously applies to only one category of retiree, namely those who qualify for pensions by virtue of age and length of service; and it advances two arguments in support of that position. It asserts, first, that the inclusion of the "age and service" provision necessarily distin-

guishes the scope of section 9711(b) from the broader coverage afforded by section 9711(a), which covers disability as well as age and length of service pensioners. In its view, any other interpretation would make the age and service requirement surplusage. Second, the company points to section 9712(b)(2)(A), which includes, as beneficiaries of the 1992 Plan, individuals who would have been eligible, under plans superseded by the Coal Act, for benefits "based upon age and service earned as of February 1, 1993[.]" It insists that the use of virtually identical language in the two sections confirms that Congress intended to limit the application of section 9711(b) to miners who satisfied the age and service requirement for retirement by February 1, 1993.

■ The plausibility of these competing interpretations underscores the ambiguity of the statute we are asked to apply. In such instances, it becomes necessary for a court to look to "the intent of Congress as revealed in the history and purposes of the statutory scheme." *Adams Fruit Co. v. Barrett,* 494 U.S. 638, 642, 110 S.Ct. 1384, 108 L.Ed.2d 585 (1990); *Tataranowicz v. Sullivan,* 959 F.2d 268, 276 (D.C.Cir.1992) ("[C]ongressional intent can be understood only in light of the context in which Congress enacted a statute and of the policies underlying its enactment.").

The history and purposes of the Coal Act, as summarized on pages 2–5 above, persuade us that the Trustees have the better part of the statutory argument. As the Fourth Circuit observed in a recent case presenting the identical question concerning the scope of section 9711(b),

> [t]he historical background leading to the enactment of the Coal Act makes clear that Congress intended to provide coal industry retirees with the lifetime benefits they had been promised. Since coal workers had been promised health benefits in the event of their retirement, whether that retirement resulted from a disability or was based solely on their satisfaction of age and service requirements, we conclude that Congress in-

tended that coal industry workers who retired as a result of a disability would be eligible for benefits under § 9711(b)(1) and § 9712(b)(2).

*Holland v. Big River Minerals Corp.,* 181 F.3d 597, 603–04 (4th Cir.1999).

Because the promises the Coal Act was intended to apply equally to all classes of pensioners, we hold that to qualify for benefits under section 9711(b), a disability retiree need only satisfy whatever requirements entitle him to receive a pension by February 1, 1993, provided he has retired from the coal industry on or before September 30, 1994. In so ruling, we express no opinion as to how the age and service requirements of section 9712(b)(2)(A) are to be applied because that section is not involved in this case. If Mr. Ferrari qualifies for health benefits under section 9711(b), he is eligible for enrollment in the 1992 Plan pursuant to section 9712(b)(2)(B); and, of course, Penn Allegh is responsible, in turn, for premium payments to the Plan as required by section 9712(d).

At this point, however, we cannot conclude that Penn Allegh was obligated to cover Mr. Ferrari under its IEP or to pay premiums to the 1992 Plan on his account because in its motion for summary judgment, Penn Allegh raised an alternative argument that Mr. Ferrari had not "retired," within the meaning of section 9711(b), by September 30, 1994, and therefore was not eligible for benefits under section 9711(b). We do not address that issue because the district court did not reach it. *See Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) ("It is the general rule ... that a federal appellate court does not consider an issue not passed upon below.") We therefore leave it for the district court to address on remand.

### III.   CONCLUSION

In light of the foregoing, we set aside the district court's grant of summary judg-

ment in favor of Penn Allegh and remand the case so that the court may consider the company's argument that Mr. Ferrari had not retired from the coal industry, within the meaning of the Coal Act, by September 30, 1994, and was therefore not eligible for benefits under Penn Allegh's IEP or the 1992 Plan.

*So ordered.*