

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-22-1999

# PA Mines Corp v Holland

Precedential or Non-Precedential:

Docket 98-3610, 98-3642

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"PA Mines Corp v Holland" (1999). *1999 Decisions.* Paper 308.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/308

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed November 22, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 98-3610 and 98-3642

PENNSYLVANIA MINES CORPORATION

v.

MICHAEL H. HOLLAND, Trustee of the United Mine
Workers of America 1974 Pension Plan; Trustee of the
United Mine Workers of America 1992 Benefit Plan;
Trustee of the United Mine Workers of America 1993
Benefit Plan; DONALD E. PIERCE, JR., Trustee of the
United Mine Workers of America 1974 Pension Plan;
Trustee of the United Mine Workers of America 1993
Benefit Plan; ELLIOT A. SEGAL, Trustee of the United
Mine Workers of America 1974 Pension Plan; Trustee of
the United Mine Workers of America 1993 Pension Plan;
JOSEPH J. STAHL, II, Trustee of the United Mine
Workers of America 1974 Pension Plan; MARTY D.
HUDSON, Trustee of the United Mine Workers of America
1992 Benefit Plan; THOMAS F. CONNORS, Trustee of the
United Mine Workers of America 1992 Benefit Plan;
Trustee of the United Mine Workers of America 1993
Benefit Plan; ROBERT T. WALLACE, Trustee of the United
Mine Workers of America 1992 Benefit Plan

MICHAEL H. HOLLAND; MARTY D. HUDSON;
THOMAS F. CONNORS; ROBERT T. WALLACE,

Third-Party-Plaintiffs

v.

BRUSH VALLEY COAL COMPANY; LADY JANE
COLLIERIES, INC.; INTERSTATE ENERGY COMPANY;
PEMICO, INC.,

Third-Party-Defendants

PENNSYLVANIA MINES CORPORATION; LADY JANE COLLIERIES, INC. and INTERSTATE ENERGY COMPANY,

Appellants

PENNSYLVANIA MINES CORPORATION

v.

MICHAEL H. HOLLAND, Trustee of the United Mine Workers of America 1974 Pension Plan; Trustee of the United Mine Workers of America 1992 Benefit Plan; Trustee of the United Mine Workers of America 1993 Benefit Plan; DONALD E. PIERCE, JR., Trustee of the United Mine Workers of America 1974 Pension Plan; Trustee of the United Mine Workers of America 1993 Benefit Plan; ELLIOT A. SEGAL, Trustee of the United Mine Workers of America 1974 Pension Plan; Trustee of the United Mine Workers of America 1993 Pension Plan; JOSEPH J. STAHL, II, Trustee of the United Mine Workers of America 1974 Pension Plan; MARTY D. HUDSON, Trustee of the United Mine Workers of America 1992 Benefit Plan; THOMAS F. CONNORS, Trustee of the United Mine Workers of America 1992 Benefit Plan; Trustee of the United Mine Workers of America 1993 Benefit Plan; ROBERT T. WALLACE, Trustee of the United Mine Workers of America 1992 Benefit Plan

MICHAEL H. HOLLAND; MARTY D. HUDSON; THOMAS F. CONNORS; ROBERT T. WALLACE,

Third-Party-Plaintiffs

Third-Party-Defendants

UNITED MINE WORKERS OF AMERICA 1992 BENEFIT PLAN* and its trustees, & MICHAEL H. HOLLAND; ELLIOTT A. SEGAL; MARTY D. HUDSON and A. FRANK DUNHAM,*

Appellants

(Pursuant to Rule 12(a), F.R.A.P.)

ON APPEAL FROM
THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

2

(Civ. No. 97-00042-j)
District Judge: The Honorable D. Brooks Smith

Argued: July 13, 1999

Before: GREENBERG and ALITO, Circuit Judges, and
ROSENN, Senior Circuit Judge

(Opinion Filed: November 22, 1999)

PENNSYLVANIA POWER & LIGHT
 COMPANY
ANDREW K. WILLIAMS
Two North 9th Street
Allentown, PA 18101

BABST, CALLAND, CLEMENTS
 & ZOMNIR
DAVID J. LAURENT (ARGUED)
Two Gateway Center
8th Floor
Pittsburgh, PA 15222

Counsel for Appellant and Cross-
Appellees, Pennsylvania Mines
Corporation, Brush Valley Coal Co.,
Lady Jane Collieries, Interstate
Energy and Pemico, Inc.

3

MORGAN, LEWIS & BOCKIUS
PETER BUSCEMI
MARILYN L. BAKER (ARGUED)
1800 M Street, N.W.
Washington, D.C. 20036

Counsel for Appellees, Michael H.
Holland, Trustee of the United Mine
Workers of America 1974 Pension
Plan; Trustee of the United Mine
Workers of America 1992 Benefit
Plan; Trustee of the United Mine
Workers of America 1993 Benefit
Plan, Donald E. Pierce, Jr., Trustee of
the United Mine Workers of America
1974 Pension Plan; Trustee of the
United Mine Workers of America
1993 Benefit Plan, Elliott A. Segal,
Trustee of the United Mine Workers
of America 1974 Plan; Trustee of the
United Mine Workers of America
1993 Pension Plan, Joseph Stahl, II,
Trustee of the United Mine Workers
of America 1974 Pension Plan, Marty
D. Hudson, Trustee of the United
Mine Workers of America 1992
Benefit Plan, Thomas F. Connors,
Trustee of the United Mine Workers
of America 1992 Benefit Plan;
Trustee of the United Mine Workers
of America 1993 Benefit Plan, Robert
Wallace, Trustee of the United Mine
Workers of America 1992 Benefit
Plan

OPINION OF THE COURT

PER CURIAM:

Pennsylvania Mines Corporation ("PMC") appeals a
judgment declaring it responsible for providing health
benefits for certain of its former employees, coal miners

who are now disabled. The main issue in this appeal is whether these miners are eligible to receive health benefits under the Coal Industry Retiree Health Benefit (Coal) Act of 1992, 26 U.S.C.A. SS 9701-22 (West Supp. 1999). The chief issue before us was addressed in recent decisions of the Fourth and District of Columbia Circuits. See Penn Allegh Coal Co. v. Holland, 183 F.3d 860 (D.C. Cir. 1999); Holland v. Big River Minerals Corp., 181 F.3d 597 (4th Cir. 1999). We follow these decisions and affirm the judgment of the District Court.

I.

A.

The provision of pension and health benefits to coal miners has a long and involved history, which has been chronicled by both the Supreme Court, see Eastern Enterprises v. Apfel, 118 S. Ct. 2131 (1998) (plurality opinion), and by various courts of appeals, see, e.g., Anker Energy Corp. v. Consolidation Coal Co., 177 F.3d 161 (3d Cir. 1999); Holland v. Big River Minerals Corp., 181 F.3d 597 (4th Cir. 1999). Because an understanding of the labor agreements governing mine workers' health and pension benefits provides important background information, we summarize them briefly below.

In 1947, the United Mine Workers of America ("UMWA") and the Bituminous Coal Operators' Association ("BCOA"), a multiemployer group of coal producers, agreed upon the first of a series of National Bituminous Coal Wage Agreements ("NBCWA's") to settle a nationwide coal strike. See, e.g., Eastern Enterprises, 118 S. Ct. at 2137; Anker Energy Corp., 177 F.3d at 164; Unity Real Estate Co. v. Hudson, 178 F.3d 649, 653 (3d Cir. 1999). These NBCWA's set the terms and conditions of employment in the coal industry and provided health and pension benefits for miners. See Anker Energy Corp., 177 F.3d at 164. The 1947 NBCWA was modified in 1950. Both the 1947 and the 1950 NBCWA's were financed by a per-ton levy on coal produced by signatory operators--that is, those bituminous coal producers who, through the BCOA, were subject to the

5

NBCWA. Neither agreement promised specific benefits; rather, the benefits were subject to cancellation or change depending on the discretionary judgment of the NBCWA's trustees. See Eastern Enterprises, 118 S. Ct. at 2138; Anker Energy Corp., 177 F.3d at 165.

The 1950 NBCWA remained largely unaltered until 1974, when, partially in response to the Employee Retirement Income Security Act (ERISA) of 1974, 29 U.S.C. S 1001 et seq., the UMWA and the BCOA negotiated a new agreement. See Eastern Enterprises, 118 S. Ct. at 2139. The new NBCWA created four trusts, two to deliver pension benefits to miners and two to deliver non-pension benefits, such as health care coverage, to miners. Under the new agreement, the UMWA 1950 Benefit Plan and Trust (the "1950 Plan") provided non-pension benefits to miners who retired before January 1, 1976, while the UMWA 1974 Benefit Plan and Trust (the "1974 Plan") provided non-pension benefits to miners who either were active or who had retired after 1975. See id. Unlike the earlier NBCWAs, the 1974 Plan provided for lifetime medical benefits for retired miners. See id.

The increased expense that accompanied the provision of lifetime medical benefits, combined with a decrease in coal revenues as alternate energy sources developed, created financial problems for both the 1950 and 1974 Plans. See id. at 2140. The next NBCWA, executed in 1978, altered the financing scheme that governed the 1950 and 1974 Plans by assigning responsibility individually to signatory employers for the health care of their own active and retired employees. As a result, coal operators subject to the 1978 NBCWA, such as PMC in this case, created their own individual employer plans ("IEP's") to provide benefits for their employees. The 1974 Plan remained in effect, but only to cover "orphan" retirees -- those miners whose employers were no longer in business in 1978. Id.; Anker Energy Corp., 177 F.3d at 165.

Despite these financial modifications, the 1978 NBCWA and subsequent agreements soon experienced financial difficulties. In 1992, prompted by a lengthy strike against the Pittston Coal Company, Congress passed the Coal Act to "identify persons most responsible for plan liabilities in

6

order to stabilize plan funding and allow for the provision of health care benefits to such retirees." Pub. L. No. 102–486, S 19142(a)(2), Stat. 2776, 3037 (1992) (quoted in Big River Minerals Corp., 181 F.3d at 601).

To accomplish this goal, the Coal Act legislates three major changes in the structure of health benefits for miners. First, it consolidates the 1950 and 1974 Plans in the UMWA Combined Benefit Fund (the "Combined Fund"). See 26 U.S.C.A. S 9702(a)(2). This fund provides health and death benefits to coal industry retirees who, as of July 20, 1992, were eligible to receive and were receiving benefits from the 1950 or 1974 Plans. See 26 U.S.C.A.S 9703(a), (f); Big River Minerals Corp., 181 F.3d at 601.

Second, the Coal Act requires signatories to the 1978 and subsequent NBCWAs to maintain coverage through their IEP's for two classes of employees. The first class is comprised of "any individual who, as of February 1, 1993 [was] receiving retiree health benefits from an individual employer plan maintained pursuant to a 1978 or subsequent coal wage agreement." 26 U.S.C.A.S 9711(a). The second class is comprised of

> "any individual who, as of February 1, 1993,[was] not receiving retiree health benefits under the individual employer plan maintained by the last signatory operator pursuant to a 1978 or subsequent coal wage agreement, but ha[d] met the age and service requirements for eligibility to receive benefits under such plan as of such date."

26 U.S.C.A. S 9711(b)(1). Miners who met the age and service requirements for eligibility to receive benefits under an IEP as of February 1, 1993, but who were not receiving such benefits, had to retire by September 30, 1994, to be eligible for coverage pursuant to the Coal Act. Id. ("This paragraph shall not apply to any individual who retired from the coal industry after September 30, 1994 . . . ."). Those who meet the eligibility requirements of subparagraph (a) or subparagraph (b) are guaranteed coverage "for as long as the last signatory operator (and any related person) remains in business." 26 U.S.C.A.S 9711(a), (b). The Coal Act clarifies that "a person shall be considered

to be in business if such person conducts or derives revenue from any business activity, whether or not in the coal industry." 26 U.S.C.A. S 9701(c)(7).

Finally, the Coal Act establishes the 1992 UMWA Benefit Plan (the "1992 Plan") to provide coverage to two classes of eligible beneficiaries. The first class consists of any individual who "but for the enactment of [the Coal Act] would be eligible to receive benefits from the 1950 UMWA Benefit Plan or the 1974 UMWA Benefit Plan, based upon age and service earned as of February 1, 1993." 26 U.S.C.A. S 9712(b)(2)(A). The second class consists of any individual "with respect to whom coverage is required to be provided [by an IEP], but who does not receive such coverage from the applicable last signatory operator . . . ." 26 U.S.C.A. S 9712(b)(2)(B). The Coal Act provides a mechanism for the 1992 Plan to recover premiums from the appropriate IEP if the IEP improperly denies coverage and the 1992 Plan provides coverage pursuant to S 9712(b). 26 U.S.C.A. S 9712(d). In no event, however, does the statutory coverage of the 1992 Plan extend to individuals who retired from the coal industry after September 30, 1994. See 26 U.S.C.A. S 9712(b).

The final piece of the coverage puzzle is the 1993 UMWA Benefit Plan (the "1993 Plan"), which was created not by statute, but rather through collective bargaining. 1 The 1993 Plan provides benefits to any individual who "would be eligible to receive benefits from the 1974 Benefit Plan but for the passage of the Coal Act, is not entitled to benefits under the Coal Act, and whose last signatory employer was no longer deriving revenue from the production of coal," App. at 205, on December 16, 1993, see App. at 203, 206.

_____

1. As Congress recognized when it passed the Coal Act, some retirees would receive benefits through subsequent, private collective bargaining agreements rather than through the mandatory terms of the Coal Act. 26 U.S.C.A. S 9711(e) ("The existence, level, and duration of benefits provided to former employees of a last signatory operator (and their eligible beneficiaries) who are not otherwise covered by this chapter and who are (or were) covered by a coal wage agreement shall only be determined by, and shall be subject to, collective bargaining, lawful unilateral action, or other applicable law.").

B.

The primary issue in this case is whether PMC, through the IEP it maintains, is responsible for providing health benefits to eight miners who formerly were employed by PMC. PMC withdrew from the coal business in 1992, but was a signatory to the 1988 NBCWA, pursuant to which it maintained an IEP. Though it withdrew from the coal business, it still derives revenue from business activities, and is therefore still considered "in business" for purposes of determining its obligations under the Coal Act. 26 U.S.C.A. S 9701(c)(7).

Six of the eight miners at issue here became disabled because of an on-the-job accident (hereafter, "disability pensioners"), and the remaining two became disabled as a result of accidents suffered outside of the job premises (hereafter, "disabled miners"). The disability pensioners became disabled before September 30, 1994, but did not actually file their disability pension applications until after that date.

PMC denied coverage for all eight individuals. The 1992 Plan then provided health benefits to these individuals and, pursuant to 26 U.S.C.A. S 9712(d), now seeks reimbursement of the premiums for the coverage provided, as well as an injunction directing PMC to provide coverage pursuant to S 9711(b)(1).

PMC argues that it is not obligated to provide health benefits to either the disability pensioners or the disabled miners because: (1) their pensions are not based on having met age and service criteria as of February 1, 1993, but, instead, are based on having become disabled; and (2) in any event, they did not retire--which PMC argues requires them to have filed their pension applications--until after the September 30, 1994, cutoff for eligibility set forth in SS 9711(b), 9712(b). PMC claims instead that the miners at issue should receive benefits from the 1993 Plan and seeks an injunction directing the 1992 Plan to cease from "diverting individuals who are properly beneficiaries of the 1993 Benefit Plan" to PMC's IEP or to the 1992 Plan. App. at 50. PMC further argues that even if the disability pensioners are entitled to health benefits, the disability miners are not.

9

The District Court rejected these arguments and held that PMC was responsible for providing benefits for the miners. The District Court, however, declined to issue an injunction ordering PMC to provide coverage, because, in the District Court's view, the criteria necessary for the issuance of an injunction had not been satisfied. The District Court also dismissed the complaint against the 1993 Plan for failure to state a claim upon which relief could be granted.

PMC appealed from the order declaring that the Coal Act covered the disability pensioners and disabled miners. It also appealed from the District Court's order dismissing the complaint against the 1993 Plan. The 1992 Plan cross-appealed from the order denying a permanent injunction directing PMC to provide the benefits in question.

II.

The principal issue before us concerns the interpretation of 26 U.S.C. SS 9711-12.2 Section 9711 describes the "continued obligations of individual employer plans" to provide retiree health benefits to former employees. Subsection (a), which is not at issue in this case, provides for continued coverage by the IEP for any individual who, as of February 1, 1993, was already receiving benefits from the IEP. Subsection (b)(1), which the 1992 Plan contends obligates PMC to provide coverage, states in pertinent part:

    (b) Coverage of eligible recipients. (1) In general. The

_____

2. This appeal raises issues of statutory interpretation subject to plenary
review. Carver v. Foerster, 102 F.3d 96, 99 (3d Cir. 1996). We reject the 1992 Plan's suggestion that its position on coverage is entitled to the deferential standard of review set forth in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989) (noting that, under trust law principles, when an ERISA plan confers discretion upon plan trustees to make eligibility determination, appellate review is for abuse of discretion). In
this case, whatever discretion the 1992 Plan Trustees have in making eligibility determinations is bounded by the mandatory terms of the Coal Act. The eligibility determination here is whether the Coal Act provides coverage for disability pensioners and disabled miners. This is a question of pure statutory interpretation over which appellate review is plenary.

last signatory operator[3] of any individual who, as of February 1, 1993, is not receiving retiree health benefits under the individual employer plan maintained by the last signatory operator pursuant to a 1978 or subsequent coal wage agreement, but has met the age and service requirements for eligibility to receive benefits under such plan as of such date, shall, at such time as such individual becomes eligible to receive benefits under such plan, provide health benefits coverage to such individual and the individual's eligible beneficiaries which is described in paragraph (2). This paragraph shall not apply to any individual who retired from the coal industry after September 30, 1994, or any eligible beneficiary of such individual.

26 U.S.C.A. S 9711(b)(1) (emphasis added). Section 9712(b) describes the class of retirees eligible to receive benefits from the 1992 Plan:

(b) Coverage Requirement. (1) In general. The 1992 UMWA Benefit Plan shall only provide health benefits coverage to any eligible beneficiary who is not eligible for benefits under the Combined Fund and shall not provide such coverage to any other individual.

(2) Eligible beneficiary. For purposes of this section, the term "eligible beneficiary" means an individual who --

(A) but for the enactment of this chapter, would be eligible to receive benefits from the 1950 UMWA Benefit Plan or the 1974 UMWA Benefit Plan, based upon age and service earned as of February 1, 1993; or

(B) with respect to whom coverage is required to be provided under section 9711, but who does not

_____

3. 26 U.S.C.A. S 9701(c)(4) defines "last signatory operator" as meaning, "with respect to a coal industry retiree, a signatory operator which was the most recent coal industry employer of such retiree." "Signatory operator" means "a person which is or was a signatory to a coal wage agreement." 26 U.S.C.A. S 9701(c)(1).

> receive such coverage from the applicable last
> signatory operator or any related person,
>
> and any individual who is eligible for benefits by
> reason of a relationship to an individual described in
> subparagraph (A) or (B). In no event shall the 1992
> UMWA Benefit Plan provide health benefits coverage to
> any eligible beneficiary who is a coal industry retiree
> who retired from the coal industry after September 30,
> 1994, or any beneficiary of such individual.

26 U.S.C.A. S 9712(b) (emphasis added).

PMC argues that, under the plain language of these provisions, the disability pensioners and miners are not covered because their eligibility was not based on meeting age and service requirements but was rather based solely on their having become disabled. The Trustees, on the other hand, contend that the statutory language may be read to mean only that the retiree must have met "whatever age or service requirements were applicable to the particular kind of pension he or she received (if any)." Appellees' Br. at 27.

Since the time of the District Court's decision and the briefing in this case, the Fourth and District of Columbia Circuits have considered these alternative interpretations, and both courts have rejected the interpretation now advanced by PMC. Both courts acknowledged that this interpretation was reasonable, but both concluded that the Trustees' reading of the statutory language was also sufficiently plausible to render that language ambiguous. The District of Columbia Circuit, agreeing with the Fourth Circuit's approach, wrote:

> The plausibility of these competing interpretations
> underscores the ambiguity of the statute we are asked
> to apply. In such instances, it becomes necessary for a
> court to look to "the intent of Congress as revealed in
> the history and purposes of the statutory scheme." . . .
>
> The history and purposes of the Coal Act . . .
> persuade us that the Trustees have the better part of
> the statutory argument. As the Fourth Circuit observed
> in a recent case presenting the identical question
> concerning the scope of section 9711(b),

12

> [t]he historical background leading to the enactment of the Coal Act makes clear that Congress intended to provide coal industry retirees with the lifetime benefits they had been promised. Since coal workers had been promised health benefits in the event of their retirement, whether that retirement resulted from a disability or was based solely on their satisfaction of age and service requirements, we conclude that Congress intended that coal industry workers who retired as a result of a disability would be eligible for benefits under S 9711(b)(1) and S 9712(b)(2).
>
> Holland v. Big River Minerals Corp., 181 F.3d 597, 60[3] (4th Cir. 1999).

Penn Allegh Coal Co., 183 F.3d at 864 (citations omitted).

Although we see considerable merit in PMC's position and regard the question before us as close, we follow the decisions and adopt the reasoning of the Fourth and District of Columbia Circuits. We thus hold thatSS 9711-12 may apply to coal industry workers who retired as a result of disability.

III.

PMC next argues that the disability pensioners are not eligible under SS 9711 and 9712 in any event because they did not retire--that is, file their pension applications-- before September 30, 1994. The Trustees contend, however, that a disability pensioner should be deemed to have retired on the date the disability occurs. The Trustees note that the Coal Act does not expressly require that a miner apply for a pension in order to be regarded as "retired," and the Trustees point out that the dictionary definition of the term "retired" does not refer to such a requirement. The Trustees further note that because a certification of total and permanent disability by the Social Security Administration is a prerequisite for a disability pension, and because the process of obtaining such a certification "can take upwards of several years," Appellees' Br. at 37 n.12, PMC's interpretation would result in "a `gap' in health benefits coverage solely because some period of time elapsed

13

between a person's disability (and the resulting involuntary cessation of work) and the date the person applied for benefits," id. at 37. The Trustees maintain that Congress did not want to produce such a result. See id . at 37.

The Fourth Circuit considered this question in Big River Minerals Corp. and wrote:

> The plain meaning of the word "retired" is"withdrawn from or no longer occupied with one's business or profession." The Random House College Dictionary 1127 (rev. ed. 1980). The plain meaning of the word "retired," therefore, does not encompass only those individuals who receive, or have applied for, pension benefits. Thus, we reject Coal Companies' argument that only those individuals who filed applications for retirement benefits as of September 30, 1994 are eligible for coverage under S 9711(b)(1) and S 9712(b)(2).

181 F.3d at 604.

We follow the Fourth Circuit on this point. The statutory language provides no indication how retirement should be defined. Notably, there is no suggestion in the statutory text that a permanently and totally disabled retiree cannot be deemed retired until after he submits his application for retirement benefits. Fixing the date of retirement for a permanently and totally disabled employee when he applies for pension benefits may in many cases be unrealistic and unfair because such an employee may be so physically or mentally disabled as to be unable to apply for pension benefits until some later period or elapse of time. On the other hand, aligning the retirement date to the onset of permanent and total disability is a fair, clear and pragmatic mechanism for ensuring that persons claiming pension benefits are not bogus retirees. By definition, a person can no longer work if he or she is permanently and totally disabled. We therefore hold that the disabled pensioners retired on the date when they became totally and permanently disabled.

IV.

The remaining issues in this appeal do not require lengthy discussion.

14

A. PMC contends that, even if the District Court was correct with respect to the disability pensioners, the disabled miners cannot be eligible beneficiaries under S 9712(b). PMC argues that "when these disabled miners become old enough to retire, they will receive age and service pensions based on an age attained and service earned after February 1, 1993," and they will therefore "fall outside of the criteria established for age and service pensioners" set forth in a notice issued by the 1992 Plan regarding eligibility criteria under SS 9711(b) and 9712 (b)(2). Appellants' Br. at 35-36 (emphasis in original). Among other things, that notice stated that "[t]he miner must have been age and service eligible to receive a pension as of February 1, 1993." App. at 209. The Trustees respond that "[t]he fact that these individuals may later become eligible for pensions in no way affects their eligibility for health care under the Coal Act, because their health care eligibility is not based on receipt of a pension in the first place." Appellees' Br. at 44 (emphasis omitted).

We agree with the Trustees. The disabled miners fall within SS 9711(b) and 9712(b)(2) because they were eligible to receive health benefits under the IEP and had "withdrawn from" their coal mining jobs by the cutoff date. Big River Minerals Corp., 181 F.3d at 604 (internal quotations omitted). The fact that they might subsequently become eligible for age and service pensions does not take them outside the coverage of these provisions. The notice to which PMC refers was obviously not drafted with the special situation of disabled miners in mind.

B. PMC appeals the District Court's dismissal of the complaint insofar as it pertained to the 1993 Plan. The District Court dismissed the complaint against the 1993 Plan because the complaint failed to allege any act or omission on the part of the 1993 Plan that affected PMC. We agree that the complaint fails to state a viable claim against the 1993 Plan.

The 1993 Plan has neither admitted nor denied coverage of the miners at issue here because the 1992 Plan has taken responsibility for providing health benefits to them, and lack of eligibility under the Coal Act is a prerequisite to coverage under the 1993 Plan. The 1993 Plan has not

15

taken any action that affects the legal interests of PMC. We see no error, therefore, in the District Court's dismissal of the complaint against the 1993 Plan.

C. The 1992 Plan cross-appeals the District Court's denial of permanent injunctive relief. On appeal, PMC has conceded that permanent injunctive relief is proper if its interpretation of the statutory provisions discussed above is rejected. See PMC Reply Br. and Cross-Appellees Br. at 14 n.3. We therefore reverse the decision of the District Court insofar as it denied permanent injunctive relief and remand for the entry of an order awarding such relief.

V.

In sum, we affirm the decision of the District Court except insofar as it denied the 1992 Plan's application for a permanent injunction. We reverse that portion of the decision and remand for further proceedings.

A True Copy:
Teste:

    Clerk of the United States Court of Appeals
    for the Third Circuit

16