**Debro Siddig ABDUL–AKBAR, Appellant,**

v.

**WATSON, Robert J.; Darcy Watson; Walter Redman; Kay Jacobs; U.S. District Court Delaware; Department of Corrections.**

No. 89–3314.

United States Court of Appeals, Third Circuit.

Argued Feb. 1, 1990.

Decided April 20, 1990.

---

Edward W. Ferruggia (argued), David F. Gould III, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for appellant.

David A. White (argued), Deputy Atty. Gen., Dept. of Justice, Wilmington, Del., for appellees.

Before STAPLETON and MANSMANN, Circuit Judges, and ACKERMAN, District Judge.*

OPINION OF THE COURT

MANSMANN, Circuit Judge.

---

* Honorable Harold A. Ackerman of the United States District Court for the District of New Jersey, sitting by designation.

In this appeal we must determine at what point the denial of *in forma pauperis* status amounts to a denial of access to the courts and whether a district court can bar an inmate from filing future *in forma pauperis* suits based on 42 U.S.C. § 1983 claims. Because we conclude that the district court erred by issuing an order barring Abdul–Akbar from filing *any in forma pauperis* § 1983 suits without considering the effects on a legitimate claim and we further conclude that his claim is not legally "frivolous," we will vacate and remand to the district court for further proceedings.

## I.

Debro Siddig Abdul–Akbar, a.k.a. Debro Michael Davis, ("Abdul–Akbar") filed suit under 42 U.S.C. § 1983 alleging a violation of his sixth amendment right of access to the courts by prison officials who forced him to surrender legal papers he claims were necessary to litigate his cases. Abdul–Akbar is an inmate at the Delaware Correctional Center, Maximum Security Unit, located at Smyrna, Delaware. He originally filed the complaint in the District Court for the Eastern District of New York, but it was transferred to the District Court of Delaware.

Abdul–Akbar claims that, in retaliation for filing lawsuits, several unnamed prison corrections officers came to his cell on February 15, 1989, and ordered him to clean some of the accumulated legal material from his cell by placing what he needed in a box and disposing of the remainder. He requested that he be allowed to mail the excess material to the district court and his request was granted. He mailed his papers to the clerks for the Eastern District of Pennsylvania and the District Court of Delaware. By early March, all of Abdul–Akbar's materials were returned by the clerks with an explanation that the court could not act as a repository for his material. In addition, Abdul–Akbar complains

that he is denied access to the law library, that his requests for photocopying take too long, and that he is denied access to jailhouse lawyers or other experienced assistance. Abdul–Akbar also claims that the policy of the district court of referring § 1983 prisoner civil rights suits to United States Magistrates results in his being held to a higher standard in his pleadings than an attorney could meet.[1]

The district court referred Abdul–Akbar's complaint to a U.S. Magistrate who recommended that the complaint be dismissed and that, in the future, Abdul–Akbar be denied *in forma pauperis* status for all cases filed pursuant to § 1983. The magistrate noted that Abdul–Akbar had filed forty § 1983 claims and three under 28 U.S.C. § 2254 in seven years and concluded that Abdul–Akbar had abused his privilege of proceeding *in forma pauperis.* The district court adopted the magistrate's recommendation, dismissed the suit and issued an order directing the Clerk of the U.S. District Court for the District of Delaware to reject any future § 1983 claims from Abdul–Akbar unless he paid the filing fee and was otherwise in compliance with court rules. The order provided that Abdul–Akbar was permitted to file *in forma pauperis* all matters other than § 1983 so long as he did not abuse the privilege.

 Abdul–Akbar appeals, claiming the order impermissibly denies him access to the courts. He also requests review of the magistrate's recommendation and district court's dismissal of his suit pursuant to 28 U.S.C. § 1915(d). We granted him *in forma pauperis* status to file the appeal and appointed counsel. We review the issuance of an order barring further filing of litigation for an abuse of discretion. *Matter of Packer Ave. Assoc.,* 884 F.2d 745 (3d Cir.1989). Our review of the district court's dismissal of a suit pursuant to 28 U.S.C. § 1915(d) involves the application of legal precepts and, therefore, is plenary.

---

**1.** On appeal, it appears that Abdul–Akbar has dropped his challenge to the procedure of referring prisoner's rights cases to magistrates. In light of the fact that such duties have been authorized for the magistrates under the Magis-

trate's Act, 28 U.S.C. § 636, and the Local Rules of Court, this claim was clearly without merit. In addition, he has dropped his claim that the magistrate held him to a higher standard.

*Wilson v. Rackmill,* 878 F.2d 772 (3d Cir. 1989).

## II.

■ Because of the importance of the right involved here, *i.e.,* an indigent prisoner's right to proceed *in forma pauperis,* we address that issue first. "It is now established beyond doubt that prisoners have a constitutional right of access to the courts." *Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977). Moreover, we recognize that "[p]aupers have been an important—and valued—part of this Court's docket, *see e.g., Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and remain so." *In re McDonald,* 489 U.S. 180, 109 S.Ct 993, 996, 103 L.Ed.2d 158 (1989). We also have stated that "[a]ccess to the courts is a fundamental tenet to our judicial system; *legitimate* claims should receive a full and fair hearing no matter how litigious the plaintiff may be." *In re Oliver,* 682 F.2d 443, 446 (3d Cir.1982) (emphasis added). Litigiousness alone will not support an injunction restricting the plaintiff's filing activities. *Id.*

■ Yet, we also recognize that the cost in time and personnel to process *pro se* and *in forma pauperis* pleadings requires some portion of the court's limited resources and ties up these limited resources to the detriment of other litigants. *See e.g., In re Green,* 669 F.2d 779 (D.C.Cir. 1981), *In re McDonald,* 489 U.S. 180, 109 S.Ct. 993, 103 L.Ed.2d 158 (1989). Often these litigious plaintiffs are repetitious, frivolous and even malicious in their pleadings. The frivolousness of some pleadings is evidenced by Abdul–Akbar's own correspondence in which he has threatened: "If I don't get a jump [suit] to fit me by tomorrow I am going to a suit, if I don't get my family to be able to send me socks or prison official's don't issue me some I am going to file a suit."

The Supreme Court addressed the nature of § 1983 claims in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) when the Court explained that

in any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

451 U.S. at 535, 101 S.Ct. at 1913. The question remaining in *Parratt v. Taylor* was whether the negligent loss of a prisoner's hobby kit rose to a deprivation of property without due process. The Court held that it did not since state tort remedies would fully compensate the prisoner for his loss. The importance of the Court's holding in *Parratt v. Taylor* is that not every "injury", *i.e.,* loss of a hobby kit or failure to receive a pair of socks, amounts to a violation of a constitutional right.

In this instance, however, Abdul–Akbar does raise an important issue since he challenges the limitation placed on his access to federal courts. The magistrate's recommendation and the district court's order revoking his *in forma pauperis* status create a presumption that all of Abdul–Akbar's future claims will be frivolous or duplicative. That has not necessarily been true of all of his past claims: one case was settled, albeit for a nominal amount, and another suit was reinstated after a decision by our court.

We recently recognized in *Matter of Packer Ave. Assoc.,* 884 F.2d 745 (3d Cir. 1989) that while the All Writs Act, 28 U.S.C. § 1651, gives the district court the power to issue an injunction to restrict the filing of meritless pleadings, it is an extreme remedy which must "be narrowly tailored and sparingly used." 884 F.2d at 747. Consequently, we concluded, based on previous decisions, that district courts in this circuit may issue an injunction to require litigants to obtain the approval of the court before filing further complaints. *Id. See also Chipps v. United States Dist. Court for the Middle Dist. of Pa.,* 882 F.2d 72 (3d Cir.1989) and *In re Oliver,* 682 F.2d 443 (3d Cir.1982).

In *Packer Ave. Assoc.*, we turned to a decision of our sister court of appeals in *In re Green*, 669 F.2d 779 (D.C.Cir.1981). In *In re Green*, the Court of Appeals for the D.C. Circuit was faced with a situation similar to ours here, involving another litigious prisoner who had "filed between 600 and 700 complaints in federal and state courts" in approximately ten years. 669 F.2d at 781. The district court order from which Green appealed to the court of appeals had permitted Green to file actions only if he paid the required filing fees and deposited $100 cash with the clerk as security for costs. *Id.* at 784. The court of appeals noted that such an order effectively denied Green meaningful access to the courts. Consequently, the court of appeals directed the district court to enter an order amending its previous one to state:

> Petitioner may not file any civil action without leave of court. In seeking leave of court, petitioner must certify that the claims he wishes to present are new claims never before raised and disposed of on the merits by any federal court. Upon a failure to certify or upon a false certification, petitioner may be found in contempt of court and punished accordingly.

*Green*, 669 F.2d at 787. We cited the language of this order in *Matter of Packer*, which involved a suit in the civil bankruptcy context. We have decided here to adopt the same language for prisoner pro se cases with one addition.

■ We recognize that the district court has the tool set forth in § 1915(d) of dismissing a legally frivolous complaint immediately after it has been filed, and prior to service of process. In *Wilson v. Rackmill*, 878 F.2d 772 (3d Cir.1989) we explained that the standard for dismissal of lawsuits under § 1915 is different from the standard used by the courts in Fed.R.Civ.P. 12(b)(6). Thus, "[d]ismissal under § 1915(d) is appropriate when the claims are based on an indisputably meritless legal theory or on clearly baseless factual contentions." *Wilson*, 878 F.2d at 774 (relying on *Neitzke v. Williams*, — U.S. ——, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989)). However, a frivolous complaint is

one thing; a continuing abuse of process is another. In the case of the latter, section 1915(d) alone is not an efficacious remedy. When a district court is confronted with a pattern of conduct from which it can only conclude that a litigant is intentionally abusing the judicial process and will continue to do so unless restrained, we believe it is entitled to resort to its power of injunction and contempt to protect its process.

We once again endorse the approach taken in *In re Green* as striking an appropriate balance between an indigent citizen's interest in access to the district court and the court's interest in being free from abusive tactics. However, given the fact that the district court's injunction here was aimed not only at repetitious civil rights suits but also at civil rights suits frivolous for other reasons, we go one step further and sanction an injunction that will bar Abdul–Akbar from filing new suits that he knows to be frivolous. More specifically, when a district court concludes that a litigant has abused the judicial process by filing a multitude of frivolous § 1983 cases in a relatively brief period of time and will continue to file such cases unless restrained, we hold that the court may enter an injunction directing that the litigant not file any section 1983 claims without leave of court and that in seeking leave of court, the litigant certify (1) that the claims he wishes to present are new claims never before raised and disposed of on the merits by any federal courts, (2) that he believes the facts alleged in his complaint to be true, and (3) that he knows of no reason to believe his claims are foreclosed by controlling law. Such an injunction should state that upon a failure to certify or upon a false certification, the litigant may be found in contempt of court and punished accordingly.

We acknowledge some risk that an indigent litigant who becomes subject to such an injunction may forego filing a claim he believes is neither repetitious nor frivolous because he fears the court will disagree and find him in contempt. Nevertheless, we believe the risk of such an unintended chill to be minimal. First, only indigent

litigants like Abdul–Akbar, whose history of repetitious and frivolous filings indicates a clear intent to abuse the courts and the *in forma pauperis* process, can be subjected to such an injunction. This population, fortunately, is a very small one; more important, it is one whose members have had substantial experience with the kinds of claims that the courts regard as frivolous. Second, the approved injunction is carefully tailored so that it requires only that a litigant refrain from filing a repetitious claim or a claim that the indigent litigant *knows* to be frivolous. The chill is thus effectively limited to those indigent litigants who have a subjective intent to abuse the process; one who makes an honest mistake about the facts or the current state of the law may not be sanctioned.[2]

We do not think it too great a burden for an indigent litigant who has already demonstrated an intent to abuse the courts that he abandon that practice or pay with contempt sanctions. The requirements outlined above will demonstrate to Abdul–Akbar that "we are saying point-blank that if he continues to show his contempt for the orderly judicial process, that process will accord him further time in prison as summarily as the law allows." *Green,* 669 F.2d at 787.

### III.

■ We now address Abdul–Akbar's allegation that the district court erred by dismissing his complaint pursuant to 28 U.S.C. § 1915(d). In *Wilson v. Rackmill,* 878 F.2d 772, 774 (3d Cir.1989), we recognized that 28 U.S.C. § 1915(d) grants the district court discretion to dismiss frivolous or malicious *in forma pauperis* suits.

> To be dismissed as frivolous, the complaint must lack an arguable factual or legal basis. If the complaint arguably

states a claim, then it should go forward so that the defendants can answer and plaintiff can receive notice of the possibility of Rule 12(b)(6) dismissal and the need to amend his complaint in order to properly state a legal claim.

*Wilson,* 878 F.2d at 774.

Abdul–Akbar's complaint alleges that several corrections officers came to his cell, ordered him to pack much of his legal material and dispose of it. Additionally, he claims that the method of photocopying court decisions is too prolonged a process to be helpful to his litigation and that he has been denied access to a law library, jailhouse lawyers or other competent legal assistance. Underlying all of these claims is a single theme—denial of access to the courts. In light of the Supreme Court's decision in *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of *meaningful* legal papers by providing prisoners with adequate law libraries or adequate assistance from people trained in the law", 430 U.S. at 828, 97 S.Ct. at 1498 (emphasis added), we cannot say that Abdul–Akbar's claims are frivolous.

In *Neitzke v. Williams,* —— U.S. ——, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989), the Court distinguished between dismissals pursuant to § 1915(d) and Rule 12(b)(6) and noted that Rule 12(b)(6) countenances the dismissal of a suit "if as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Neitzke,* 109 S.Ct. at 1832 (citations omitted). Thus, a suit must be dismissed if the facts do not rise to a level of injury to support the legal

---

**2.** We recognize that, in some contexts, the courts use an objective/reasonableness standard to assess whether a party's abuse of process merits sanction. It is clear, for instance, that courts use the objective standard in Rule 11 case, even in those involving pro se litigants. Fed.R.Civ.P. 11 advisory committee note, *reprinted in* 97 F.R.D. 165, 199 (1983) ("Rule 11 continues to apply to anyone who signs a pleading, motion, or other paper ... [T]he standard

is the same for unrepresented parties...."). However, we conclude that the less-chilling subjective standard is appropriate for this case because of the severity of the potential sanction for violations of the order—additional jail time—and because the order regulates the petitioner's use of 42 U.S.C. § 1983, the principal means by which citizens may petition a court for relief from deprivations of their fundamental rights.

theory, "whether it is based on an outlandish legal theory or on a close but unavailing one." 109 S.Ct. at 1832.

Since, under Rule 12(b)(6), a plaintiff is placed on notice of a pending motion to dismiss and is given the opportunity to amend the complaint to state a claim before the motion to dismiss is ruled upon, an opportunity not granted to a litigant under § 1915(d), the question of whether Abdul–Akbar's claims would survive a Rule 12(b)(6) challenge is a matter which will have to be determined by the district court on remand. We recognize that prison officials may have legitimate penological interests which may conflict with prisoners' enjoyment of their constitutional rights, *see generally Thornburgh v. Abbott,* —— U.S. ——, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989) (regulations affecting sending of publications to prisoners are valid if reasonably related to legitimate penological interests), however, resolution of that conflict, so heavily based upon the facts, must first take place in the district court.

### IV.

We conclude that the district court erred by dismissing Abdul–Akbar's claims pursuant to 28 U.S.C. § 1915(d) since the complaint alleged a violation of the fundamental right of access to the courts which, under these circumstances, is not a frivolous claim. Consequently, we will vacate the district court's dismissal of the suit. In addition, we will vacate the district court's injunction. Although this is a case in which an injunction directed to repetitious or otherwise frivolous claims might be appropriate, (1) the district court did not expressly find that an injunction was necessary in order to avoid future abuse of the court's process, (2) to the extent the district court may have addressed that issue *sub silentio*, its direction may have been influenced by its erroneous view that the complaint in this case was frivolous, and (3) the terms of the injunction impermissibly deprived Abdul–Akbar of all access to the federal courts in the event his federally secured rights are violated. If the district court wishes to revisit the injunction issues, it may do so on remand. Therefore, we will vacate the order and remand to the district court for further proceedings in accordance with this opinion.