OPINION OF THE COURT
ALDISERT, Circuit Judge.
The primary issue for decision is whether we should overrule the holding of Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997), interpreting 28 U.S.C. § 1915(g). Under this statute, popularly known as the “three strikes” rule, a prisoner may not file a new action or appeal in forma pauperis (“I.F.P.”) if, on three or more prior occasions while incarcerated or detained, the prisoner has brought a federal action or appeal that was dismissed on the grounds that it was frivolous, malicious or fails to state a claim, unless the prisoner “is under imminent danger of serious physical inju *311 ry.” We held in Gibbs that “imminent danger” is measured at the time of the alleged incident, not at the time the complaint is filed. 116 F.3d at 86. Three of our sister courts of appeals have since rejected our teachings in Gibbs, holding instead that the court should assess “imminent danger” as of the time the prisoner’s complaint is filed and that a prisoner’s allegation that he faced danger in the past is insufficient to allow him to proceed I.F.P. Medberry v. Butler, 185 F.3d 1189, 1193 (11th Cir.1999); Ashley v. Dilworth, 147 F.3d 715, 717 (8th Cir.1998); Banos v. O’Guin, 144 F.3d 883, 884-885 (5th Cir.1998). We now abandon the interpretation set forth in Gibbs and adopt that of our sister courts of appeals. We hold also that § 1915(g), as so interpreted, is constitutional.
I.
Appellant Debro Siddiq Abdul-Akbar was most recently incarcerated by the Delaware Department of Corrections from June 10, 1994 through May 15, 1999 on state charges including robbery, conspiracy, assault and shoplifting. During the time material to Appellant’s underlying proposed Complaint based on 42 U.S.C. § 1983, he was incarcerated at the Sussex Correctional Institute in Georgetown, Delaware. On May 17,1999, Appellant reported to a community confinement center, and on May 27, 1999, he was released from the custody of the Department of Corrections.
Appellant has filed at least 180 civil rights or habeas corpus claims. Abdul-Akbar v. Dept. of Corrections, 910 F.Supp. 986, 998 (D.Del.1995). In Abdul-Akbar v. Watson, 901 F.2d 329 (3d Cir.1990), this court reviewed a district court order barring Appellant from filing any further § 1983 claims I.F.P. and held that a district court may enter an injunction precluding a prisoner from filing any § 1983 claims without leave of court and without making certain good faith certifications. 901 F.2d at 333. We stated that Abdul-Akbar’s “history of repetitious and frivolous filings indicates a clear intent to abuse the courts and the I.F.P. process.” Id. at 334. An injunction subsequently was entered by the district court. Abdul-Akbar v. Dept. of Corrections, 910 F.Supp. at 1009.
On February 10, 1998, Appellant filed a motion for leave to file a § 1983 Complaint, a proposed Complaint and a motion to proceed I.F.P. The proposed Complaint alleged that on or about January 9, 1998, prison officials arbitrarily sprayed Appellant with pepper gas and refused to provide him with medical treatment even though they knew that he suffers from asthma. Appellant also claimed that certain prison officials violated his civil rights by belonging to a racist organization, that one defendant failed to investigate properly the pepper spray incident, and that the district court judge violated his Sixth Amendment right of access to the courts by preventing his complaints from being heard.
The district court denied the motion to proceed I.F.P., reasoning that (1) Appellant had brought actions that the court had dismissed as frivolous on more than three prior occasions, and (2) he did not claim to be in imminent danger of serious physical injury.
The district court had jurisdiction over this case under 28 U.S.C. § 1331. We have jurisdiction because an order denying leave to proceed I.F.P. is a final, collateral order appealable under 28 U.S.C. § 1291. The appeal was timely filed. This court reviews de novo issues of statutory interpretation, Pennsylvania Mines Corp. v. Holland, 197 F.3d 114, 119 n. 2 (3d Cir.1999), and the constitutionality of a statute, DeSousa v. Reno, 190 F.3d 175, 180 (3d Cir.1999).
II.
The discretionary power to permit indigent plaintiffs to proceed without first paying a filing fee was initially codified in the federal statutes in 1892. See Act of July 20, 1892, ch. 209 1-5, 27 Stat. 252. Congress enacted the I.F.P. statute, currently codi *312 fied at 28 U.S.C. § 1915, “to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation.” Deutsch v. United States, 67 F.3d 1080, 1084 (3d Cir.1995) (citing Denton v. Hernandez, 504 U.S. 25, 31, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992)). Congress was also aware of the potential for abuse, and it included a subsection allowing for dismissal of frivolous or malicious actions. Denton, 504 U.S. at 31, 112 S.Ct. 1728.
Congress subsequently enacted the Prison Litigation Reform Act (“PLRA” or “Act”), Pub.L. No. 104-134, 110 Stat. 1321 (1996), largely in response to concerns about the heavy volume of frivolous prisoner litigation in the federal courts. See 141 Cong. Rec. S14408-01, S14413 (daily ed. Sept. 27, 1995) (statement of Sen. Dole) (explaining that the number of prisoner suits filed “has grown astronomically— from 6,600 in 1975 to more than 39,000 in 1994”). In enacting the PLRA, Congress concluded that the large number of merit-less prisoner claims was caused by the fact that prisoners easily obtained I.F.P. status and hence were not subject to the same economic disincentives to filing meritless cases that face other civil litigants. See 141 Cong. Rec. S7498-01, S7526 (daily ed, May 25, 1995) (statement of Sen. Kyi) (“Filing frivolous civil rights lawsuits has become a recreational activity for long-term residents of prisons.”); 141 Cong. Rec. S7498-01, S7524 (daily ed. May 25, 1995) (statement of Sen. Dole) (“[Pjrison-ers will now ‘litigate at the drop of a hat,’ simply because they have little to lose and everything to gain.”). To curb this trend, the PLRA instituted a number of reforms in the handling of prisoner litigation.
Among other things, the PLRA amended the I.F.P. statute as it applies to prisoners. Under the statute as amended, a prisoner who is allowed to proceed I.F.P. is not excused from paying filing fees, but is only excused from pre-paying them in full if they meet certain criteria. The PLRA now requires prisoners who qualify for I.F.P. status to pay by way of an initial partial fee, followed by installment payments until the entire fee is paid. 28 U.S.C. § 1915(b)(1). Congress also added § 1915(g), the “three strikes rule,” which limits a prisoner’s ability to proceed I.F.P. if the prisoner abuses the judicial system by filing frivolous actions. Prisoners may avoid the limitation in this provision, however, if they are under “imminent danger of serious physical injury.”
This appeal requires us to decide when the existence of “imminent danger” is to be assessed; specifically, whether it is assessed as of the time the complaint is filed, or at some time in the past, even though that danger no longer exists when the complaint is filed.
Today we abandon the rule announced in Gibbs that “imminent danger” is assessed at the time of the alleged incident. We adopt, instead, the construction set forth by the Fifth, Eighth and Eleventh Circuit Courts of Appeals, that a prisoner may invoke the “imminent danger” exception only to seek relief from a danger which is “imminent” at the time the complaint is filed. We conclude that this interpretation is consistent with the plain language of § 1915(g), with congressional intent and with the legislative purpose of the PLRA as a whole.
III.
This is a case of statutory construction, and we begin our analysis with the language of § 1915(g):
In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, *313 unless the prisoner is under imminent danger of serious physical injury.
A.
We now apply settled precepts of statutory construction and take as our beginning point a recognition that from the earliest times, we have adopted what is called the American Plain Meaning Rule exemplified in Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917) (internal citations omitted):
It is elementary that the meaning of the statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the law-making body which passed it, the sole function of the courts is to enforce it according to its terms. Where the language is plain and admits of no more than one meaning the duty of interpretation does not arise and the rules which are to aid doubtful meanings need no discussion.
In 1993, the Court made a modern statement of the plain meaning rule: “Our task is to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive.” Negonsott v. Samuels, 507 U.S. 99, 104, 113 S.Ct. 1119, 122 L.Ed.2d 457 (1993). If the language of the statute is plain, the sole function of the court is to enforce the statute according to its terms. United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). The plain meaning is conclusive, therefore, “except in the ‘rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.’ ” Id. at 242, 109 S.Ct. 1026 (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)).
B.
We now apply the ordinary meaning of the words chosen by Congress in drafting § 1915(g). The phrase “in no event” simply means “may not.” This court has previously held that the word “bring” in this context plainly refers to the time when the civil action is initiated. Gibbs v. Ryan, 160 F.3d 160, 162 (3d Cir.1998). Putting the phrases together, the first clause of § 1915(g) obviously means “a prisoner may not file a new civil complaint.” In the ordinary sense of the words, this clause refers temporally to the time the new complaint is filed. The clause “unless he is in imminent danger of serious physical injury” is an exception to the preclusive effect of the statute. But the exception is cast in the present tense, not in the past tense, and the word “is” in the exception refers back to the same point in time as the first clause, i.e., the time of filing. The statute contemplates that the “imminent danger” will exist contemporaneously with the bringing of the action. Someone whose danger has passed cannot reasonably be described as someone who “is” in danger, nor can that past danger reasonably be described as “imminent.” The court so held in Ashley v. Dilworth, 147 F.3d 715, 717 (8th Cir.1998):
As the statute’s use of the present tense verbs ‘bring’ and ‘is’ demonstrates, an otherwise ineligible prisoner is only eligible to proceed IFP if he is in imminent danger at the time of filing. Allegations that the prisoner has faced imminent danger in the past are insufficient to trigger this exception to § 1915(g) and authorize the prisoner to pay the filing fee on the installment plan.
See also Medberry v. Butler, 185 F.3d 1189, 1193 (11th Cir.1999) (“Congress’ use of the present tense in § 1915(g) confirms that a prisoner’s allegation that he faced imminent danger sometime in the past is an insufficient basis to allow him to proceed in forma pauperis....”); Banos v. O’Guin, 144 F.3d 883, 885 (5th Cir.1998) (“[T]he language of § 1915(g), by using the *314 present tense, clearly refers to the time when the action or appeal is filed or the motion for IFP status is made.”)- Taking both clauses together, the statute plainly means that a prisoner is not permitted to file his complaint unless he is, at that time, under imminent danger. Viewed from the Plain Meaning Rule, we interpret “is under imminent danger” to relate to the time when “a prisoner bring[s] a civil action.”
IV.
Reinforcing the interpretation of the statute by application of the Plain Meaning Rule is an analysis of language found in other portions of the PLRA. For example, another section of the Act, § 1915(b)(4), provides:
In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.
28 U.S.C. § 1915(b)(4) (emphasis added). As in subsection (g), this provision begins with the exhortation “in no event shall,” and, as in subsection (g), it describes a necessary condition by using the present tense of the operative verb. Section 1915(b)(4) plainly means that the courts may not prohibit a prisoner from filing a new complaint for the reason that he does not possess any assets at the time of filing. The temporal reference point for the verb “has” is the time of filing, the time at which the fee is due.
Other provisions support this construction by focusing on the time of filing. Section 1997e(a) of Title 42, amended by the PLRA, requires that the plaintiff exhaust administrative remedies, but only if the plaintiff is a prisoner at the time of filing. Greig v. Goord, 169 F.3d 165, 167 (2d Cir.1999). Similarly, the applicability of the personal injury requirement of 42 U.S.C. § 1997e(e) turns on the plaintiffs status as a prisoner, not at the time of the incident, but when the lawsuit is filed. Harris v. Garner, 216 F.3d 970, 974-975 (11th Cir.2000). Finally, the need for the district court to screen a complaint in a civil action filed by a prisoner, as required by 28 U.S.C. § 1915A, looks to the plaintiffs status when the case is filed. Johnson v. Hill, 965 F.Supp. 1487, 1488 n. 2 (E.D.Va.1997).
V.
Appellant argues that requiring proof of imminent danger as of the time of filing is inconsistent with Congress’ intent. Having applied the American Plain Meaning Rule and having determined that there is no ambiguity, we are not required to answer this contention of the Appellant. Nevertheless, we perceive the congressional intent as clear when we examine the purpose of the entire PLRA.
As noted above, Congress enacted the PLRA in order to limit the filing of frivolous and vexatious prisoner lawsuits. To accomplish this, Congress curtailed the ability of prisoners to take advantage of the privilege of filing I.F.P. The “three strikes” rule added by the PLRA supplied a powerful economic incentive not to file frivolous lawsuits or appeals. In stark terms, it declared that the I.F.P, privilege will not be available to prisoners who have, on three occasions, abused the system by filing frivolous or malicious lawsuits or appeals, no matter how meritorious subsequent claims may be.
It is important to note that § 1915(g) does not block a prisoner’s access to the federal courts. It only denies the prisoner the privilege of filing before he has acquired the necessary filing fee. Appellant argues that a prisoner subject to the “three strikes” rule, but who does not establish “imminent danger,” could for ever lose his ability to bring his suit as a practical matter because of the difficulties of obtaining the money, the application of the statute of limitations, or the possible loss of necessary evidence. This argument attempts to prove too much. It overlooks the fact that prisoners may seek relief in *315 state court, where limitations on filing I.F.P. may not be as strict. Potentially negative consequences in federal courts, as distinguished from state courts, are precisely the consequences intended by Congress. The outcome predicted by Appellant is, for better or for worse, exactly the result the PLRA intends.
Recognizing that it could take prisoners a significant period of time to obtain the filing fee in some cases, Congress created a limited exception aimed at preventing future harms, and did so through the use of the word “imminent.” “Imminent” dangers are those dangers which are about to occur at any moment or are impending. See Webster’s II New Riverside UniveRSIty DICTIONARY 611 (1984). By using the term “imminent,” Congress indicated that it wanted to include a safety valve for the “three strikes” rule to prevent impending harms, not those harms that had already occurred. The imminent danger exception allows the district court to permit an otherwise barred prisoner to file a complaint I.F.P. if the prisoner could be subject to serious physical injury and does not then have the requisite filing fee.
In contrast, under the Gibbs construction, the prisoner need only show that he was subject to imminent danger at the time of the alleged incident. By definition, an imminent threat of serious physical injury always exists in the moments before any such injury is inflicted. Thus, under the Gibbs approach, any time that an otherwise disqualified prisoner alleges that any threat of physical injury occurred at any time, that prisoner automatically qualifies for the imminent danger exception. The Gibbs interpretation of the imminent danger exception thereby swallows the rule. Like every other court of appeals that has considered this issue, we refuse to conclude that with one hand Congress intended to enact a statutory rule that would reduce the huge volume of prisoner litigation, but, with the other hand, it engrafted an open-ended exception that would eviscerate the rule.[1]
This is not to suggest that we would criticize any statute or judicially-created legal precept that would permit any prisoner, even a frequent filer, to file such a complaint I.F.P. Such a notion is entirely compatible with the precept that for any injury, there should be a remedy. But we do not write in the abstract here, nor do we write on a clean slate. Congress has deliberately decided to legislate on this subject by proclaiming, as public policy, a determination to reduce prisoner litigation *316 in the federal courts. As citizens, we may disagree with the congressional wisdom, but as judges, knowing the clearly stated legislative purpose, we may not disembowel the legislative act. Federal courts, unlike state common law King’s Bench courts, do not have unlimited power and authority. We are limited to that which has been granted by Congress. What Congress gives it may also take away. The ability to proceed I.F.P. is not a constitutional right. Congress granted the right to proceed I.F.P. in 1892, and it has the power to limit this statutorily created right. Here it has taken away our ability as judges to grant I.F.P. status to a “three strikes” prisoner, no matter how meritorious his or her subsequent claims may be, unless the prisoner “is under imminent danger of serious physical injury” when he or she “bring[s] a civil action.” Congress has held trump here, and it has dealt a hand. As judges we must play it.
VI.
Appellant also mounts the argument that § 1915(g), as we interpret it, would offend the equal protection guarantee implied in the Fifth Amendment by improperly burdening a prisoner’s “fundamental right of access” to the courts.[2] Moreover, he argues that we must apply strict scrutiny in considering this contention and that, alternatively, even under rational basis scrutiny, the statute, as we interpret it, does not pass constitutional muster because it is not rationally related to a legitimate governmental interest.
A.
Although the Fifth Amendment contains no Equal Protection Clause, “the Fifth Amendment’s Due Process Clause prohibits the Federal Government from engaging in discrimination that is ‘so unjustifiable as to be violative of due process.’ ” Schlesinger v. Ballard, 419 U.S. 498, 500 n. 3, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975) (quoting Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954)). Accordingly, the Court has construed the Fifth Amendment to contain an equal protection guarantee. See, e.g., Edmonson v. *317 Leesville Concrete Co., 500 U.S. 614, 616, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991). Fifth Amendment equal protection claims are examined under the same principles that apply to such claims under the Fourteenth Amendment. Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 217, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995) (citations omitted). Statutes that substantially burden a fundamental right or target a suspect class must be reviewed under “strict scrutiny;” that is, to survive, they must be narrowly tailored to serve a compelling governmental interest. Plyler v. Doe, 457 U.S. 202, 216-217, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). Conversely, if a statute neither burdens a fundamental right nor targets a suspect class, it does not violate the Fourteenth Amendment’s Equal Protection Clause, as incorporated through the Fifth Amendment’s Due Process Clause, so long as it bears a rational relationship to some legitimate end. Romer v. Evans, 517 U.S. 620, 631, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996).
This requires us first to determine whether Appellant is a member of a suspect class or whether a fundamental right is implicated. Neither prisoners nor indigents are suspect classes. See, e.g., Pryor v. Brennan, 914 F.2d 921, 923 (7th Cir.1990) (noting that prisoners do not constitute a suspect class); Harris v. McRae, 448 U.S. 297, 323, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980) (noting that poverty is not a suspect classification). Nor has Appellant argued before us that indigent prisoners, specifically, frequent filer indigent prisoners, are a suspect class. We then must inquire whether the “time of filing” construction infringes upon one of Appellant’s fundamental rights.
B.
Appellant contends that the “time of filing” interpretation adopted by our sister courts of appeals and adopted by us today unconstitutionally burdens his fundamental right of access to the courts by requiring him to pay fees. But the right of access to the courts is not absolute. United States v. Kras, 409 U.S. 434, 450, 93 S.Ct. 631, 34 L.Ed.2d 626 (1972). Courts presented with this issue have consistently held that merely requiring a prisoner to pay filing fees in a civil case does not, standing alone, violate that prisoner’s right of meaningful access to the courts. See, e.g., Rivera v. Allin, 144 F.3d 719, 724 (11th Cir.1998); Roller v. Gunn, 107 F.3d 227, 231 (4th Cir.1997). We agree. Section 1915(g) does not prevent a prisoner with “three strikes” from filing a civil action; he or she is simply unable to enjoy the benefits of proceeding I.F.P. and must pay the fees at the time of filing instead of under the installment plan. And, given the right of Congress to limit the power of federal courts, it cannot be said that limiting the temporal aspect of the exception to the “three strikes” rule infringes upon Appellant’s right of access to the courts.
The Court has recognized only a “narrow category of civil cases in which the State must provide access to its judicial processes without regard to a party’s ability to pay court fees.” M.L.B. v. S.L.J., 519 U.S. 102, 113, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996). An unconditional right of access exists for civil cases only when denial of a judicial forum would implicate a fundamental human interest — such as the termination of parental rights or the ability to obtain a divorce. Id. at 116-117, 117 S.Ct. 555; Boddie v. Connecticut, 401 U.S. 371, 382-383, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). Examples of interests that the Court has held do not rise to this level are bankruptcy filings, Kras, 409 U.S. at 444-445, 93 S.Ct. 631, and welfare benefit determinations, Ortwein v. Schwab, 410 U.S. 656, 659, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973).
In the seminal case of Boddie, the Court emphasized that the deprivation of due process emanated from “the State’s refusal to admit these appellants to its courts, the sole means in Connecticut for obtaining a divorce, [and that this] must *318 be regarded as the equivalent of denying them an opportunity to be heard upon their claimed right to a dissolution of their marriages.” 401 U.S. at 380-381, 91 S.Ct. 780 (emphasis added). Unlike the parties in Boddie, Appellant is not precluded from filing his § 1983 Complaint in another court system that does not have a “three strikes” provision. State courts have concurrent jurisdiction over § 1983 cases. Howlett v. Rose, 496 U.S. 356, 358, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990). Appellant can seek I.F.P. status under Delaware law because it does not have a parallel “three strikes” rule. See generally 10 Del. C. § 8802 (I.F.P. statute). A state court provides a fully adequate forum for the vindication of civil rights claims. See generally Tafflin v. Levitt, 493 U.S. 455, 458, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990) (“[Sjtate courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States.”). Because neither Delaware substantive law nor Delaware court rules prevented him, as an indigent prison litigant, from pursuing his claims, we do not agree that strict scrutiny is the appropriate test. We therefore examine § 1915(g) using rational basis review as have our sister courts of appeals. See, e.g., Rodriguez v. Cook, 169 F.3d 1176, 1180 (9th Cir.1999); White v. Colorado, 157 F.3d 1226,1234 (10th Cir.1998), cert. denied, 526 U.S. 1008, 119 S.Ct. 1150, 143 L.Ed.2d 216 (1999); Wilson v. Yaklich, 148 F.3d 596, 604 (6th Cir.1998), cert. denied, 525 U.S. 1139, 119 S.Ct. 1028, 143 L.Ed.2d 38 (1999); Rivera, 144 F.3d at 727; Carson v. Johnson, 112 F.3d 818, 822 (5th Cir.1997).
C.
We are satisfied that our interpretation of § 1915(g) passes the rational basis test. Appellant focuses on the right of access to the courts, arguing that § 1915(g)’s purpose and effect is to prevent him and other frequent filer prisoner indigents from filing civil lawsuits. In addressing this contention, we must first examine the legislative purpose.
As discussed above, the legislation was aimed at the skyrocketing numbers of claims filed by prisoners — many of which are emotionally driven but legally deficient — and the corresponding burden those filings have placed on the federal courts. Congress sought to put in place economic incentives that would prompt prisoners to “stop and think” before filing a complaint.[3] The “three strikes” rule thus serves as a rational deterrent mechanism, forcing potential prisoner litigants to examine whether their filings have any merit before they are filed, and disqualifying frequent filers who have failed in the past to carefully evaluate their claims prior to filing.
Deterring frivolous prisoner filings in the federal courts falls within the realm of Congress’ legitimate interests, *319 and the interpretation we adopt today is rationally related to the achievement of that interest. “[T]he right of access to federal courts is not a free floating right, but rather is subject to Congress’ Article III power to set limits on federal jurisdiction.” Roller, 107 F.3d at 231. Although it had the power to do so, Congress did not repeal any particular cause-of-action available to prisoners. Rather, Congress changed only the rules regarding I.F.P. status. Under § 1915(g), prisoners are still able to file civil actions; they are merely prohibited from enjoying I.F.P. status. Lyon v. Krol, 127 F.3d 763, 765 (8th Cir.1997); Carson, 112 F.3d at 821. Preventing frequent fliers from obtaining fee waivers is rationally related to the legitimate government interest of deterring frivolous lawsuits because “Congress is no more compelled to guarantee free access to federal courts than it is to provide unlimited access to them.” Roller, 107 F.3d at 231. Although the dissent claims that the “three strikes” rule embodied in S 1915(g) is too blunt an instrument and is insufficiently targeted to arrest frivolous filings, we have always recognized that constitutional constraints “require[ ] neither a perfect nor even best available fit” between a statute’s goal and the means employed in that statute to further that goal. Mariani v. United States, 212 F.3d 761, 774 (3d Cir.2000) (en banc).
Congress included an exception to the “three strikes” rule for those cases in which it appears that judicial action is needed as soon as possible to prevent serious physical injuries from occurring in the meantime. Thus, § 1915(g) rationally balances the economic deterrence rationale behind the “three strikes” rule with the need for those prisoners who remain in danger of future grievous harm to be able to file immediately. Accordingly, we hold that our interpretation of § 1915(g) does not violate equal protection concepts embodied in the Fifth Amendment.
[[Image here]]
We have considered all contentions presented by the parties and conclude that no further discussion is necessary.
The judgment of the district court will be affirmed.[4]

. The dissent devotes much effort to asserting that, even under our time of filing construction, Appellant's § 1983 Complaint satisfied the terms of the imminent danger exception because the Complaint, under the dissent’s liberal construction, alleged an ongoing risk of serious physical injury. Importantly, at no point in the present litigation did Appellant seek to rely on an ongoing danger theory, even through the able counsel appointed by this court for purposes of this appeal. Inasmuch as the dissent uses our silence with respect to an issue not raised by the parties to argue that our construction of the imminent danger exception eliminates a prisoner’s ability to satisfy the imminent danger exception by alleging an ongoing risk of serious physical injury, we respond only by stressing that we by no means intend such a result.
At all events, we doubt whether the allegations in Appellant’s § 1983 Complaint suffice to establish such an ongoing danger. Even under a liberal reading of Appellant's pleading, it is evident that Appellant’s allegations center on an incident that occurred on or about January 9, 1998, when a prison official allegedly sprayed Appellant with pepper gas. App. 9-10. Appellant does not identify any further incidents occurring after that date. Moreover, although Appellant alleges that he experienced several other acts of physical harassment by different prison officials, these events not only all pre-date the January 9th incident, but also appear entirely unconnected to it, and thus undermine the dissent's claim that the danger to Appellant was ongoing. Finally, while Appellant does allege that he complained for a year about the use of pepper gas (App. 10), and that prison officials engaged in "continuing harassment, ploits [sic] to hurt or kill [him], and other forms of retaliation,” (App.8, 9) such generalized allegations strike us as insufficient to connect the separate incidents mentioned above into a patter n of threats of serious physical injury that are ongoing.

. In his reply brief, Appellant contends for the first time that this interpretation of the statute runs counter to the protections assured by the Eighth Amendment. Appellant argues that "[t]he right to be free from serious physical injury while in prison is surely as fundamental as the right to divorce,” citing as authority Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), and that, therefore, he is entitled to a waiver of filing fees as a matter of law. We will not discuss the merits of this contention because Abdul-Akbar waived this argument by not raising it in his opening brief. Ghana v. Holland, 226 F.3d 175, 180 (3d Cir.2000). "[The argument in the reply brief comes] too late.... Rule 28(a)(5) of the Federal Rules of Appellate Procedure and our Local Rule 28.1(a) require appellants to set forth the issues raised on appeal and to present an argument in support of those issues in their opening brief.” Id.; see also Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir.1993) ("It is well settled that if an appellant fails to comply with these requirements on a particular issue, the appellant normally has abandoned and waived that issue on appeal and it need not be addressed by the court of appeals.”).
The dissent contends that Abdul-Akbar's waiver should be ignored because an assessment of the importance of a claimed constitutional interest is an implicit part of any equal protection or due process inquiry determining the level of scrutiny that will apply to a challenged government action. The dissent agrees with Abdul-Akbar that the right to be free from serious physical injury is just as weighty as the right to a divorce at issue in Boddie, and would hold that such a right represents a fundamental interest for Boddie purposes. Furthermore, the dissent also points to several other underlying rights, including the First Amendment right to free exercise of religion, that are not at issue in the instant case, but that the dissent would also presumably treat as fundamental interests under Boddie. What the dissent fails to recognize, however, is that the importance of the underlying right is largely immaterial to the question whether that right is a fundamental interest for Boddie purposes. As we discuss infra in Part VLB., an underlying constitutional entitlement rises to the level of a Boddie fundamental interest only when the government blocks the sole legal means for safeguarding that entitlement, and not simply because the interest itself is a weighty one.

. Congress’s rationale for placing the fee requirements on prisoners is captured in the statements of Senator Jon Kyi:
Section 2 will require prisoners to pay a very small share of the large burden they place on the Federal judicial system by paying a small filing fee upon commencement of lawsuits. In doing so, the provision will deter frivolous inmate lawsuits. The modest monetary outlay will force prisoners to think twice about the case and not just file reflexively. Prisoners will have to make the same decision that law-abiding Americans must make: Is the lawsuit worth the price? Criminals should not be given a special privilege that other Americans do not have.... The volume of prisoner litigation represents a large burden on the judicial system, which is already overburdened by increases in nonprisoner litigation. Yet prisoners have very little incentive not to file nonmeritorious lawsuits. Unlike other prospective litigants who seek poor person status, prisoners have all the necessities of life supplied, including the materials required to bring their lawsuits. For a prisoner who qualifies for poor person status, there is no cost to bring a suit and, therefore, no incentive to limit suits to cases that have some chance of success. The filing fee is small enough not to deter a prisoner with a meritorious claim, yet large enough to deter frivolous claims and multiple filings.
141 CONG. REC. S7498-01, S7526 (daily ed. May 25, 1995) (statement of Sen. Kyi) (citation omitted).

. The court acknowledges with appreciation the able pro bono representation of Appellant by the lawfirm of Jenner & Block.